**IN THE SUPREME COURT OF TENNESSEE**
**AT JACKSON**



**FILED**

**November 23, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**PUBLICATION**

| | | |
|---|---|---|
| HECK VAN TRAN, | ) | F i l e d : N o v e m b e r 23, 1999 |
| | ) | |
| Petitioner-Appellant, | ) | SHELBY CRIMINAL |
| | ) | Trial Court No. P-14409 |
| v. | ) | |
| | ) | Hon. William H. Williams, |
| STATE OF TENNESSEE, | ) | Judge |
| | ) | |
| Respondent-Appellee. | ) | Supreme Court |
| | ) | No. W1998-00175-SC-R11-PD |

FOR APPELLANT:
Brock Mehler
Nashville, Tennessee

William D. Massey
Memphis, Tennessee

FOR APPELLEE:
    Paul G. Summers
    Attorney General & Reporter

    Michael E. Moore
    Solicitor General

    Kathy Morante
    Deputy Attorney General

    Jennifer L. Smith
    Assistant Attorney General
    Criminal Justice Division
    Nashville, Tennessee

    William L. Gibbons
    District Attorney General
    30th Judicial District

    John Campbell
    Assistant District Attorney
    Memphis, Tennessee

    Glenn R. Pruden
    Assistant Attorney General
    Nashville, Tennessee

# O P I N I O N

AFFIRMED AS MODIFIED.            DROWOTA, J.

We granted the application for permission to appeal filed on behalf of petitioner Heck Van Tran in order to clarify the procedure by which a prisoner who has been sentenced to death may raise the issue of present mental competency to be executed.[1] The petitioner attempted to raise this issue in a petition for relief under the Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222 (1997). Both the trial court and the Court of Criminal Appeals held that a proceeding for post-conviction relief is not the appropriate avenue for litigating the issue of competency to be executed. We agree with the lower courts that a petition for post-conviction relief is not the appropriate mechanism for raising the issue. Indeed, we have determined that there currently is no Tennessee statute that contains a procedure for litigating the issue of present competency.

This determination, however, does not end the inquiry. The common law recognized that a prisoner sentenced to death had a right to assert a claim of present incompetency. Moreover, in Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d. 335 (1986), the United States Supreme Court held that the Eighth Amendment to the United States Constitution precludes execution of a prisoner who is incompetent. It is well-settled that this Court has inherent supervisory authority over the judicial system of this State, particularly with respect to the modification of common law doctrines and procedural rules. Accordingly, we exercise our inherent supervisory authority and herein adopt and set forth the procedure that a prisoner sentenced to death must follow in order to assert his or her common law and constitutional rights to challenge competency to be executed. We further hold that under this procedure the petitioner's claim that he is incompetent to be executed is not ripe for resolution. Accordingly, we affirm the decision of the lower courts on the separate grounds stated herein.

---

[1] In his supplemental brief and at oral argument, the petitioner also asserted that his sentence should be vacated because it is disproportionate under Tenn. Code Ann. § 39-13-206(c)(1)(D) (1997). Comparative proportionality review is a creature of statute and is not constitutionally required. State v. Bland, 958 S.W.2d 651, 663 (Tenn. 1997). It therefore affords no basis for post-conviction relief. In addition, this issue has been previously determined by this Court on direct appeal. State v. Van Tran, 864 S.W.2d 465, 482 (Tenn. 1993).

# I.

## BACKGROUND

In 1989 the petitioner, Heck Van Tran, was convicted of three counts of felony murder and sentenced to death for his role in killing three people during a robbery at a Memphis restaurant. On appeal this Court affirmed the three murder convictions but set aside two of the death sentences and remanded those cases for re-sentencing.[2] However, we affirmed the third sentence of death.[3]

In March 1995, the petitioner filed a petition for post-conviction relief alleging in part that in light of his present mental incompetency it would be unconstitutional to carry out the death sentence. The petition alleged that for the past four and one-half years, Van Tran had been psychotic and treated with "antipsychotic, antidepressant and antiparkinson [sic] medication." The petition alleged that numerous mental health professionals had diagnosed Van Tran as suffering from chronic paranoid schizophrenia, a condition from which remission is rare and which has a prognosis of unchanged or progressive deterioration. Without medication, petitioner alleged, his condition significantly worsens. Attached to the post-conviction petition was the affidavit of Dr. John Pruett, M.D., the attending physician at the Riverbend Maximum Security Institution. In the affidavit Dr. Pruett opined that the petitioner was not competent to be executed.

Finding no merit to any of the grounds for relief alleged in the petition, the trial court denied the petition. Specifically addressing the allegation that petitioner was not competent to be executed, the trial court held that the claim that the petitioner suffers from a mental condition that would bar his being put to death is not cognizable

---

[2]On remand the petitioner received two concurrent life sentences for his role in the deaths of these two victims.

[3]A detailed account of the circumstances of this crime as well as a discussion of the issues raised on direct appeal can be found in this Court's opinion in State v. Van Tran, 864 S.W.2d 465 (Tenn. 1993).

in a post-conviction proceeding since, even were the allegation true, the verdict and the judgment in petitioner's case would not be void or voidable as a result of a constitutional violation.

The Court of Criminal Appeals affirmed the trial court and emphasized that post-conviction relief is a statutory creation and that the post-conviction statute makes no provision for addressing a claim of present incompetency to be executed. The intermediate court noted that unlike most other states in which capital punishment is imposed, Tennessee has no specific statutory procedure for addressing this issue. While the intermediate court recognized that the petitioner was unquestionably entitled to be heard in some forum on this issue and noted that, if no state hearing was afforded him, the petitioner could seek relief in federal court under Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986), the Court of Criminal Appeals expressed its reluctance as an intermediate appellate court to establish a procedure for determining competency. Instead, the Court of Criminal Appeals left the decision on this matter to the determination of the General Assembly or this Court. Thereafter, we granted review to answer the important question of the procedural mechanism by which a prisoner sentenced to death in Tennessee should raise and litigate a claim of present incompetency to be executed.

## II.

## COMPETENCY TO BE EXECUTED

From medieval times the common law has recognized that the insane or mentally incompetent should not be executed. See Ford, 477 U.S. at 406-08, 106 S. Ct. at 2600-01; Nobles v. Georgia, 168 U.S. 398, 406, 18 S. Ct. 87, 90, 42 L. Ed. 515 (1897); Note, The Eighth Amendment and the Execution of the Presently Incompetent, 32 Stan. L. Rev. 765, 778 (1980); Note, Insanity of the Condemned, 88 Yale L.J. 533, 535 (1979). The common law doctrine prohibiting the execution of the

insane, a principle of American jurisprudence from the earliest times, see Ford, 477 U.S. at 408, 106 S. Ct. at 2601, was recognized in Jordan v. State, 124 Tenn. 81, 87, 135 S.W. 327, 328 (1911), in which this Court wrote, "By the common law, one who was charged with crime cannot be required to plead to the indictment, put upon his trial, sentenced or punished while insane." (emphasis added). The Court in Jordan cited to 4 William Blackstone, Commentaries *396:

> Another cause of regular reprieve is, if the offender becomes *non compos* between the judgment and the award of execution; for regularly, as was formerly observed, though a man be *compos* when he commits a capital crime, yet if he becomes *non compos* after, he shall not be indicted; if after indictment, he shall not be convicted; if after conviction, he shall not receive judgment; if after judgment, he shall not be ordered for execution: for '*furiosus solo furore punitur* [a madman is punished by his madness alone],' and the law knows not but he might have offered some reason, if in his senses, to have stayed these respective proceedings. It is therefore an invariable rule, when any time intervenes between the attainder and the award of execution, to demand of the prisoner what he hath to allege why execution should not be awarded against him; and if he appears to be insane, the judge in his discretion may and ought to reprieve him.

A myriad of rationales was advanced to explain the common law rule such as execution of the insane is inhumane, has no deterrent value, prevents religious reckoning, denies the defendant the ability to assist in his own defense, and serves no retributive purpose. Ford, 477 U.S. at 405-09, 106 S. Ct. at 2600-01; Ex parte Jordan, 758 S.W.2d 250, 252 (Tex. Crim. App. 1988).

Regardless of its initial justifications, in Ford, 477 U.S. at 409-10, 106 S. Ct. at 2602, a narrow majority of the United States Supreme Court held that the execution of a prisoner who is insane is prohibited by the Eighth Amendment to the United States Constitution made applicable to the States through the Fourteenth Amendment. In so holding, the Ford majority relied upon the longstanding recognition of the principle at common law and upon the fact that no State currently permits the execution of the insane. See Ford, 477 U.S. at 408-09, 106 S. Ct. at

-5-

2601.

The majority in Ford, however, only reached the issue of whether the common law rule against executing the insane was of constitutional dimension because of the need to determine whether the petitioner in that case was entitled to a de novo hearing at his federal habeas corpus proceeding on the issue of competency. Although a majority of the justices in Ford agreed that a de novo hearing was required because the state fact-finding proceedings were inadequate and not entitled to the presumption of correctness, not even a plural majority of justices could agree on what procedures would have been adequate to foreclose de novo federal review. Four justices[4] appeared to require the full panoply of trial procedures and perhaps even the heightened due process applicable in capital trials. Ford, 477 U.S. at 410-18, 106 S. Ct. at 2602-06. Three justices[5] opined that less formal proceedings meeting the basic requirements of due process were sufficient. Ford, 477 U.S. at 425-31, 106 S. Ct. at 2609-12. Finally, two dissenting justices[6] found the minimal procedure followed in Ford constitutionally acceptable.[7] Ford, 477 U.S. at 432-35, 106 S.Ct. at 1612-15. Furthermore, the Ford Court failed to articulate the legal definition of insanity in the execution context although Justice Powell opined that for purposes of the Eighth Amendment, the proper inquiry is whether the defendant is able to comprehend the nature, pendency, and purpose of his execution. Ford, 477 U.S. at 423, 106 S. Ct. at 2608-09.

Although unable to reach a consensus, the Ford Court expressly charged the individual states with the task of developing procedures to ensure that the insane will

---

[4]Marshall, J., with whom Brennan, Blackmun and Stevens, JJ., joined.

[5]Powell, J., concurring opinion, and O'Connor J., concurring and dissenting opinion with whom White, J., joined.

[6]Rehnquist, J., dissenting, with whom Burger, C.J., joined.

[7]In Florida, the question of sanity was investigated by a panel of three experts appointed by the governor, to whom they in turn reported their findings. The governor made the final decision on the issue of competency to be executed. See Fla. Stat. Ann. § 922.01 (1985).

not be executed.  <u>Ford</u>, 477 U.S. at 416-17, 106 S. Ct. at 2605.  Recognizing the common law and constitutional prohibitions and the due process requirements of <u>Ford</u>, many states have passed statutes providing procedures for determining a prisoner's competency to be executed.[8]  At the present time, Tennessee has no statute expressly addressing the issue of a prisoner's competency to be executed.  This lack of an explicit statute, an omission particularly inexplicable in the wake of <u>Ford</u>, has resulted in this appeal in which the petitioner contends that the issue of whether he is competent to be executed may be addressed in an action brought under the Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222 (1997).  We disagree.

Post-conviction relief is granted when a prisoner's conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Tennessee or United States Constitutions.  <u>See</u> Tenn. Code Ann. § 40-30-203 (1997).  As the trial court in this case recognized, the fact that a petitioner's present mental condition bars execution does not render the prisoner's conviction or sentence void or voidable.  Instead it simply prevents the State from carrying out the sentence until the prisoner's competence is restored.  A prisoner's competency to be executed is a question independent of the validity of trial and sentencing, and as such, not within the contemplation of the Act.  <u>See</u> <u>Ford</u>, 477 U.S. at 426, 106 S. Ct. at 2610 (Powell, J., concurring) (stating that a petitioner's assertion of incompetency raises the question of when, not whether, an execution may take place).

Furthermore, the one-year statute of limitations for actions under the Post-Conviction Act, <u>see</u> Tenn. Code Ann. § 40-30-202(a) (1997), indicates that the

---

[8]<u>See, e.g.</u>, Ala. Code § 15-16-23 (1995); Ariz. Rev. Stat. Ann. § 13-4021 (West Supp. 1998); Fla. Stat. Ann. § 922.07 (West Supp. 1999); Fla. R. Crim. P. 3.811-3.812 (Supp. 1999); Ga. Code Ann. § 17-10-60 (1997); Kan. Stat. Ann. § 22-4006 (1995); Ky. Rev. Stat. Ann. §§ 431.213, 431.2135 (Michie Supp. 1998); Md. Ann. Code, Correctional Services § 3-904(a) (1999); Miss. Code Ann. § 99-19-57 (1994); Mo. Rev. Stat. § 552.060 (Supp. 1999); N.Y. Correct. Law § 656 (McKinney Supp. 1999); Okla. Stat. Ann. tit. 22, §§ 1005 to 1008 (West 1998); Tex. Crim. P.Code Ann. art. 46.04 (West Supp. 1999); Wyo. Stat. §§ 7-13-901 to -903 (Michie 1999).

General Assembly did not contemplate that post-conviction relief would be available in this circumstance. The issue of competency to be executed may arise long after the one-year statute has expired and, in fact, is generally not considered ripe until execution is imminent. Cf. Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S. Ct. 1618, 140 L. Ed. 2d 849 (1998)(stating that claim of incompetency was premature until warrant for execution was issued); Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853, 863, 122 L. Ed. 2d 203 (1993)(commenting that the issue of sanity is properly considered in proximity to the execution); Hance v. Kemp, 373 S.E.2d 184, 192 (1988)(holding consideration of present sanity premature because execution was not imminent); Colburn v. State, 966 S.W.2d 511, 513 (Tex. Crim. App. 1998)(en banc)(holding that the proper time to argue competency is "when execution is imminent"). In addition, an allegation of incompetency to be executed does not meet any of the grounds allowing consideration of a petition filed after the statute has run, see Tenn. Code Ann. § 40-30-202 (b) (1997), nor does it satisfy any of the criteria for re-opening a petition for post-conviction relief under Tenn. Code Ann. § 40-30-217(a) (1997). That the Post-Conviction Act is such an ineffective and incomplete means to protect the insane from execution indicates that the General Assembly never intended for the Act to serve this purpose. For these reasons, we affirm the holding of the trial court and the Court of Criminal Appeals that a proceeding for post-conviction relief is not the appropriate avenue for litigating the issue of competency to be executed.

Moreover, exhaustive research has revealed no other existing statutory procedure that could function as a procedural avenue for litigating a prisoner's challenge to his or her competency to be executed. The writ of error coram nobis challenges the judgment itself and like post-conviction proceedings is subject to a one-year statute of limitations. See State v. Mixon, 983 S.W.2d 661 (Tenn. 1999). While there is no statute of limitations on a habeas corpus petition, habeas corpus relief is granted in Tennessee only when it appears upon the face of the judgment or

record of the proceedings upon which the judgment is rendered that the conviction court lacked jurisdiction or authority to sentence the defendant or that the defendant's sentence of imprisonment or other restraint has expired. Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993). As previously stated, a prisoner's allegation that present mental incompetence bars execution does not render the conviction or sentence void . Competency to be executed is a question independent of the validity of trial and sentencing proceedings, and as such, not grounds for habeas corpus relief in Tennessee.

The petitioner has suggested that the common law writ of certiorari might be adopted to allow an inmate to request injunctive relief against the Warden of the institution where he or she is incarcerated or the Commissioner of the Department of Correction. However, as the petitioner admits, the writ of certiorari addresses itself to past actions and not to prospective unlawful action and is a means of review, not mandate. See Taylor v. Waddey, 206 Tenn. 497, 501, 334 S.W.2d 733, 735 (1960) (comparing writ of mandamus and noting certiorari is designed to review and examine the proceedings of lower tribunals, to ascertain their validity, and to correct errors of law made by these bodies where there has been some judicial action).

Our conclusion that no existing statute provides a procedure for litigating the issue of competency to be executed does not end the inquiry, however. It has long been recognized and widely accepted that the Tennessee Supreme Court is the repository of the inherent power of the judiciary in this State. Petition of Burson, 909 S.W.2d 768, 772 (Tenn. 1995) (citing cases). Indeed, Tenn. Code Ann. §§ 16-3-503 and -504 (1994) broadly confer upon this Court all discretionary and inherent powers existing at common law at the time of the adoption of the state constitution. Id. We have also recognized that this Court has not only the power, but the duty, to consider, adapt, and modify common law rules. State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999); Cary v. Cary, 937 S.W.2d 777, 781 (Tenn. 1996) (citing cases). Finally, we

have recently held in the context of a capital case that Tennessee courts have inherent power to adopt appropriate rules of criminal procedure when an issue arises for which no procedure is otherwise specifically prescribed. State v. Reid, 981 S.W.2d 166, 170 (Tenn. 1998).[9]

Given the common law origin of the bar against executing a mentally incompetent prisoner, which was specifically discussed in Jordan, 124 Tenn. at 87, 135 S.W. at 329, and even earlier in Bonds v. State, 8 Tenn. 154 (1827), this Court is empowered to adopt a procedure to enable a prisoner to exercise this right. Moreover, in the wake of Ford, this Court has an affirmative constitutional duty to ensure that no incompetent prisoner is executed. Cf. Dungan v. Dungan, 579 S.W.2d 183, 185 (Tenn. 1979) (holding that United States Supreme Court decision requiring state courts to be open to bona fide indigents seeking the judicial dissolution of their marriages imposed an affirmative constitutional duty which triggered the inherent and statutory supervisory powers of this Court). Accordingly, we exercise our inherent supervisory authority and hereinafter adopt and set forth the procedure that a prisoner sentenced to death must follow in order to assert his or her common law and constitutional right to challenge competency to be executed.[10] Cf. Singleton v. State, 437 S.E.2d 53, 58 (S.C. 1993); State v. Harris, 789 P.2d 60, 65 (Wash. 1990) (recognizing existence of common law and constitutional bar against executing the insane and in the absence of a statute, judicially adopting procedures to determine competency).

## III.

### PROCEDURES

---

[9]In Reid, we held that a capital defendant must file pretrial notice of intent to present expert testimony regarding mental condition as mitigation evidence at the sentencing phase of trial.

[10]At oral argument, the petitioner and the State agreed and conceded that this Court has the inherent supervisory authority to adopt a procedure to govern claims of incompetency to be executed.

## A. Standard for Competency

Essential to any competency proceeding is a definition of the legal test or standard for competency. As previously discussed, the majority of the United States Supreme Court in Ford left this question unanswered. Justice Powell, however, opined that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and the reason they are to suffer it. 477 U.S. at 422, 106 S. Ct. at 2608. This test of competency has been described as the "cognitive test," see Singleton, 437 S.E.2d at 58. Several states have adopted this test by statute or court rule. See, e.g., Ariz. Rev. Stat. Ann. §13-4021(B) (West Supp. 1998); Fla. R. Crim. P. 3.811(b) (West Supp. 1999); Ga. Code Ann. §17-10-60 (1997); Ky. Rev. Stat. Ann. § 431.213 (Michie Supp. 1998); N.Y. Correct. Law § 656(a) (McKinney Supp. 1999); Tex. Crim. P. Code Ann. art. 46.04(h) (West Supp. 1999); Wyo. Stat. § 7-13-901(a)(v) (Michie 1999).

At common law a more rigorous standard was applied. In addition to requiring that the prisoner be aware of the penalty and its purpose, the prisoner must also have been able to assist in his or her own defense. See 4 Blackstone, Commentaries *389 ("the law knows not but he might have offered some reason, if in his senses, to have stayed these respective proceedings"); 1 M. Hale, The History of the Pleas of the Crown 34-35 (1736) ("were he of sound memory he might allege somewhat in stay of judgment of execution"). This additional test, the so-called "assistance prong," has been adopted in some states by judicial decision, see, e.g., Singleton, 437 S.E.2d at 58; Harris, 789 P.2d at 65, and in other states by statute, see, e.g., Miss. Code Ann. § 99-19-57(2)(b) (1994); Mo. Rev. Stat. § 552.060(1) (Supp. 1999).

The more stringent assistance test is used to determine competency to stand trial or plead guilty in Tennessee. See, e.g., Jordan, 135 S.W. at 328-29 (person competent to stand trial if capable of understanding the nature and object of the proceedings against him and if he rightly comprehends his own condition in reference

to such proceedings and can conduct his defense rationally); <u>Berndt v. State</u>, 733 S.W.2d 119, 123 (Tenn. Crim. App. 1987)(whether the accused has the capacity to understand the nature of the proceedings, consult with counsel, and assist in his or her defense); <u>State v. Johnson</u>, 673 S.W.2d 877, 880 (Tenn. Crim. App. 1984)(the test is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him). However, once the conviction is final, there is a lessened need for a defendant to assist in his or her defense given the availability of both state and federal collateral review of trial errors, and the expansion of the right to competent counsel at trial. <u>Id.</u> We agree with Justice Powell that in a proceeding to determine competency to be executed, only those who are unaware of the punishment they are about to suffer and the reason they are to suffer it are entitled to a reprieve. 477 U.S. at 422, 106 S. Ct. at 2608. Accordingly, we adopt the "cognitive test," and hold that under Tennessee law a prisoner is not competent to be executed if the prisoner lacks the mental capacity to understand the fact of the impending execution and the reason for it. <u>Cf.</u> Fla. R. Crim. P. 3.811(b) (West Supp. 1999); Ky. Rev. Ann. § 431.213 (Michie Supp. 1998).

### B. Initiation of a Competency Proceeding

Having delineated the standard for determining competency to be executed, we must next delineate the appropriate forum for asserting incompetency and the time at which the issue is ripe for determination. Under the common law,

> [a]n inquisition to determine the mental condition of a person convicted of crime and under sentence of death, who, it was alleged had become insane since the rendition of judgment, was . . . under the control of the trial court. 4 Blackstone's Com. p. 395; <u>Nobles v. Georgia</u>, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515. The prisoner's guilt had been finally established prior to such application, and the plea, based on his alleged insanity subsequently contracted, was an appeal to the humanity of the court to postpone his execution. <u>Laros v. Commonwealth</u>, 84 Pa. 200. The trial court alone decided when such an inquisition was warranted.

People v. Preston, 177 N.E. 761, 763 (1931).  See also Nobles, 168 U.S. at 407, 13 S. Ct. at 91;  People v. Eldred, 86 P.2d 248, 250 (1938); Bingham v. State, 169 P.2d 311, 314 (Okla. Crim. App. 1946); 88 Yale L.J. at 535-537 (1979).  The common law rule giving the trial court sole authority to determine the issue of competency was logical in view of the fact that "in cases tried at common law execution often followed fairly quickly after trial, so that incompetence at the time of execution was linked as a practical matter with incompetence at the trial itself."  Ford, 477 U.S. at 420-21, 106 S. Ct. at 2607 (Powell, J., concurring).

Execution does not currently follow quickly after trial.   Modern practice provides for more extensive review of convictions and sentences, including not only direct appeal, but also both state and federal post-conviction proceedings.  See id. at 420, 106 S. Ct. at 2607.  These proceedings often are not concluded until several years after a prisoner was tried and sentenced to death.  Until the very moment of execution, the issue of a prisoner's competency to be executed "can never be conclusively and finally determined."  Ford, 477 U.S. at 429, 106 S.Ct. at 2612 (O'Connor, J., concurring in the result in part and dissenting in part) (emphasis in original).   Therefore, the issue of competency to be executed is generally not considered ripe for determination until execution is imminent.[11]

In Tennessee, execution is imminent only when a prisoner sentenced to death has unsuccessfully pursued all state and federal remedies for testing the validity and correctness of the prisoner's conviction and sentence and this Court has set an execution date upon motion of the State Attorney General.[12]  Given existing practice,

---

[11]Cf. Stewart, 523 U.S. at __, 118 S. Ct. at 1621 (stating that claim of incompetency was premature until warrant for execution was issued); Herrera, 506 U.S. at 406, 113 S. Ct. at 863 (commenting that the issue of sanity is properly considered in proximity to the execution); Hance, 373 S.E.2d at 192 (holding consideration of present sanity premature because execution was not imminent); Colburn, 966 S.W.2d at 513 (holding that the proper time to argue competency is "when execution is imminent").

[12]Cf. Ga. Code Ann. § 17-10-67(1997) (application shall not be filed until completion of direct appeal and order has been signed by a judge setting a time period for the execution); Ky. Rev. Stat. Ann. § 431.213 (Michie Supp. 1998) (only a condemned person may file a petition and condemned

-13-

we conclude that a prisoner should raise the issue of competency to be executed in the first instance in this Court when filing a written response to the motion of the State Attorney General to set an execution date. The prisoner will have ten days from the filing of the motion of the State Attorney General to file a response and raise this issue. See Tenn. R. App. P. 22(a). This Court will not make a determination of the issue, and asserting the issue will not constitute grounds for denying the State Attorney General's motion. To the contrary, the issue will be ripe for determination only when the motion is granted and an execution date is set. However, in the order setting the execution date, this Court will remand the issue of competency to be executed to the trial court where the prisoner was originally tried and sentenced for a determination of the issue.[13] See Harris, 789 P.2d at 70 (holding that proper venue for determining competency to be executed is the trial court where prisoner was convicted and sentenced).

## C. Filing Requirements

Within three days of entry of the order of remand, the prisoner shall file a petition in the trial court and shall serve a copy of the petition upon the local district attorney general and the State Attorney General. The petition shall identify the proceeding in which the prisoner was convicted and sentenced and shall clearly set forth the facts alleged to support the claim that execution should be stayed due to present mental incompetence. The petition shall have attached to it affidavits, records, or other evidence supporting the factual allegations of mental incompetence. The petition shall also identify any previous proceedings in which the prisoner has

---

person is defined as "a person for whom a specific day of execution is fixed by a mandate from the Kentucky Supreme Court or a warrant signed by the Governor"); Singleton, 437 S.E.2d at 60 (execution is imminent and petition may be filed "upon issuance of an order for execution by this Court").

[13]If the original trial court is unable to hear this matter, the presiding judge of the judicial district will assign the case. We also note that the trial judge has wide discretion to utilize necessary measures to ensure the security of the prisoner and attendees at the hearing. If the trial judge determines that a hearing is warranted and security in the local venue is insufficient, the trial judge may arrange with the Warden and the Department of Correction to hold the hearing at the Riverbend Maximum Security Institution, or with the Presiding Judge of the Twentieth Judicial District, to hold the hearing in a criminal trial courtroom in Davidson County.

challenged his or her mental competency in relation to the conviction and sentence in question. Finally, the petition shall set forth the name, location, hourly rate, and qualifications of any mental health professionals who would be available and willing to evaluate the prisoner if the trial court determines an evaluation is required. Cf. Ga. Code Ann. § 17-10-63(b) (1997); Tex. Crim. P. Code Ann. art. 46.04(c) (West Supp. 1999).

As soon as possible after the filing of the petition, but no later than three days, the district attorney general shall file a response to the petition. The response shall set forth the name, location, hourly rate, and qualifications of any mental health professionals who would be available and willing to evaluate the prisoner if the trial court determines an evaluation is required.

## D. Required Threshold Showing

No later than four days after a response to the petition is filed, the trial court shall decide if a hearing is warranted. This decision depends upon whether the prisoner has made the required threshold showing that his or her competency to be executed is genuinely in issue. See Ford, 477 U.S. at 417, 106 S. Ct. at 2605 (plurality opinion); 477 U.S. at 426, 106 S. Ct. at 2610 (Powell, J., concurring). Although a majority of the United States Supreme Court agreed in Ford that a hearing as to competency is required only when a prisoner makes a "high threshold showing" that competency is genuinely in issue, neither the plurality opinion nor the concurring opinion defines the precise nature of the "high threshold showing," but instead left that task to the states.

In defining the required showing, we begin with Ake v. Oklahoma, 470 U.S. 68, 82-83, 105 S.Ct. 1087, 1095-96, 84 L.Ed. 2d 53 (1985), a case cited by Justice Powell in Ford as an example of an acceptable threshold. See Ford, 477 U.S. at 426, 106 S. Ct. at 2610. In Ake the United States Supreme Court set forth the due

process standard to be applied by the states when a defendant requests appointment of a state-funded psychiatric expert. The Court in Ake held that before due process requires appointment of a defense psychiatrist at state expense, a defendant must make a "substantial showing" that sanity is "seriously in question" and would be "a significant factor at trial." Ake, 470 U.S. at 82-83, 105 S. Ct. at 1095-96.

Applying Ake, this Court in State v. Barnett, 909 S.W.2d 423, 431 (Tenn. 1995), held that unsupported assertions that expert services are needed are insufficient to entitle a defendant to a hearing and emphasized that a defendant must demonstrate by reference to the facts and circumstances of his or her particular case that appointment of a psychiatric expert is necessary to ensure a fair trial. A similar standard is applied in Tennessee in cases where a defendant claims that he or she is incompetent to stand trial. Before a mental evaluation is required, the evidence must warrant a belief that the defendant is incompetent to stand trial. State v. West, 728 S.W.2d 32, 34 (Tenn. Crim. App. 1986); State v. Lane, 689 S.W.2d 202, 204 (Tenn. Crim. App. 1984).

The rationale underlying the threshold requirement is twofold. First, death penalty litigation is replete with the potential for false claims and intentional delay. See, e.g. Harris, 789 P.2d at 69; Woodard v. Hutchins, 464 U.S. 377, 380, 104 S. Ct. 752, 753, 78 L. Ed. 2d 541 (1984) ("A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward – often in a piecemeal fashion – only after the execution date is set or becomes imminent."). Second, as previously discussed, the issue of incompetency can be repeatedly litigated by the same prisoner because until the very moment of execution the prisoner can claim that he or she has become incompetent sometime after the previous determination to the contrary. Ford, 477 U.S. at 429, 106 S. Ct. at 2612 (O'Connor, J., concurring in the result in part, dissenting in part). As the Washington Supreme Court recognized,

[t]he death row inmate has an obvious incentive to make a last-minute claim of insanity. Without a substantial threshold requirement, the eleventh hour petitions asserting insanity would be encouraged because the death row petitioner would know that the mere filing of a conclusory petition would result in a stay of execution. Placing no initial burden on the petitioner is an invitation to specious insanity claims.

Harris, 789 P.2d at 69.

Therefore, we adopt a rule that places the burden on the prisoner to make a threshold showing that he or she is presently incompetent. This burden may be met by the submission of affidavits, depositions, medical reports, or other credible evidence sufficient to demonstrate that there exists a genuine question regarding petitioner's present competency. In most circumstances, the affidavits, depositions, or medical reports attached to the prisoner's petition should be from psychiatrists, psychologists, or other mental health professionals. Id. If the trial court is satisfied there exists a genuine disputed issue regarding the prisoner's present competency, then a hearing should be held. Harris, 789 P.2d at 69-70.

We emphasize that the proof required to meet the threshold showing must relate to present incompetency. Therefore, by definition, at least some of the evidence submitted must be the result of recent mental evaluations or observations of the prisoner. The threshold can not be satisfied if the only evidence offered is stale in the sense that it relates to the prisoner's distant past competency or incompetency. We also note that the unsupported conclusory assertions of a family member of the prisoner or an attorney representing the prisoner will ordinarily be insufficient to satisfy the required threshold showing.

### E. Preliminary Order, Appointment of Expert, and Mental Evaluation

Again, we emphasize that the trial court shall file a preliminary order within four days from the filing of the State's response to the petition. If the trial court determines that the prisoner has failed to meet the required threshold showing, the

trial court shall enter an order denying the petition, which shall include written detailed findings of fact and conclusions of law. The prisoner may appeal the trial court's denial of the petition pursuant to the procedure set out hereafter in Section G, "Appellate Review."

If, however, the trial court determines that the prisoner has satisfied the required threshold showing, the trial court shall enter an order appointing at least one, but no more than two, mental health professionals from each list submitted by the respective parties. The order shall direct that the prisoner be evaluated by the appointed mental health professionals to determine competency to be executed as defined herein. The order shall also require the mental health professionals to file written evaluations with the trial court within ten days of the appointment. Upon filing, the trial court clerk shall forward a copy of the written evaluations to counsel for the petitioner, the district attorney general, and the State Attorney General.[14] See Tenn. R. Evid. 706 (stating that as to bench-tried issues, the court may on its own motion or on motion of any party appoint expert witnesses agreed upon by the parties); cf. Ariz. Rev. Stat. Ann. § 13-4022(c) (West Supp. 1998); Fla. R. Crim. P. 3.812(c)(2) (West. Supp. 1999); Kan. Stat. Ann. § 22-4006(b) (1995); Ky. Rev. Stat. Ann. § 431.2135 (2) (Michie Supp. 1998); Tex. Crim. P. Code Ann. art. 46.04 (f) (West Supp. 1999); Wyo. Stat. § 7-13-902(a)-(c) (Michie 1999) (stating that courts have the power to appoint experts, order evaluations, and require that the evaluations be filed in a short period of time when competency to be executed is raised as an issue).

Within ten days after the evaluations are filed, the trial court shall hold and

---

[14]We note that by filing a petition contesting competency, the prisoner is deemed to have consented to submit to a State examination for the purposes of assessing mental competency to be executed. The constitutional concerns at issue in cases such as Reid, 981 S.W.2d at 172; State v. Martin, 950 S.W.2d 20, 24 (Tenn. 1997), and State v. Huskey, 964 S.W.2d 892, 897 (Tenn. 1998) are not present in a competency proceeding. As previously stated, a proceeding to determine competency may be initiated only after all other available federal and state remedies have been exhausted. Therefore, the prisoner and the State should freely disclose to each other all information relating to the prisoner's competency as this proceeding may be, in a very real sense, the last avenue of reprieve available to an inmate sentenced to death.

conclude a hearing to determine the issue of competency. No jury is involved and the trial judge alone shall determine the issue of competency. We disagree with the dissent's assertion that a prisoner is entitled to have a jury determine the issue of competency to be executed. Even at common law, a prisoner had no absolute right to a jury trial on this issue, although the trial court at common law had the discretion to impanel a jury. See Nobles, 168 U.S. at 407, 18 S. Ct. at 91; Jordan, 124 Tenn. at 90-91, 135 S.W. at 330. Under existing Tennessee law, a judge rather than a jury determines the closely analogous question of competency to stand trial. State v. Johnson, 673 S.W.2d 877, 880 (Tenn. Crim. App. 1984) (stating that trial judge alone decides competence to stand trial). Accordingly, in light of the vast changes that have occurred in the legal landscape since the adoption of the common law rule and in light of analogous, existing Tennessee law regarding competency to stand trial, we have no hesitation in holding that a prisoner is not entitled to have a jury determine the issue of competency to be executed. Exhaustive research reveals that the vast majority of jurisdictions apply a similar rule either by statute or case law. See, e.g., Ariz. Rev. Stat. Ann. § 13-4022(F) (West Supp. 1998); Fla. R. Crim. P. 3.811(d)(1) (West Supp. 1999); Ga. Code Ann. § 17-10-68(d) (1997); Kan. Stat. Ann. § 22-4006(b) (1995); Ky. Rev. Stat. Ann. § 431.2135(2) (Michie Supp. 1998); Md. Ann. Code, Correctional Services § 3-904(e)(1) (1999); Mo. Rev. Stat. § 552.06(4) (Supp. 1999); Ohio Rev. Code Ann. § 2949.28(B)(1)(b)(2) (Anderson Supp. 1998); Tex. Crim. Proc. Code Ann. art. 46.04(k) (West 1999); Wyo. Stat. § 7-13-902(f) (Michie 1999); Singleton, 437 S.E.2d at 59; Harris, 789 P.2d at 72 (requiring that the court hold a hearing and determine the issue without a jury). Indeed, only three jurisdictions appear to adopt the position advocated by the dissent and require or allow a jury to determine the issue of competency to be executed. See Ala. Code § 15-16-23 (1995); Cal. Penal Code § 3701 (West 1982); Okla Stat. Ann. tit. 22, § 1005 (West 1999). We also note that none of the various opinions in Ford held that a jury determination of the issue of competency to be executed is constitutionally required. See Ford, 477 U.S. at 418, 106 S. Ct. at 2606 (plurality opinion) ("petitioner is entitled

to an evidentiary hearing in the District Court, *de novo*, on the question of his competence to be executed."); Ford, 477 U.S. at 427, 106 S. Ct. at 2610 (Powell, J., concurring) ("[A] constitutionally acceptable procedure may be far less formal than a trial. The State should provide an impartial officer or board that can receive evidence and argument from the prisoner's counsel . . . ."); Ford, 477 U.S. at 429, 106 S. Ct. at 2611-12 (O'Connor, J., concurring in the result in part and dissenting in part) ("I consider it self-evident that once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly.").

At the outset we note that at the hearing the prisoner is presumed to be competent to be executed. Ford, 477 U.S. at 426, 106 S. Ct. at 2610 (Powell, J., concurring); Harris, 789 P.2d at 67; see also Ariz. Rev. Stat. Ann. § 13-4022(E) (West Supp. 1998); Ohio Rev. Code Ann. § 2949.29(c) (Anderson Supp.1998) (stating that a prisoner is presumed to be competent). To prevail, the prisoner must overcome the presumption of competency by a preponderance of the evidence. Cf. Colo. Rev. Stat. § 16-8-111(2) (1999); Ky. Rev. Stat. Ann. § 431.2135 (3) (Michie Supp. 1998); Md. Code Ann. Correctional Services § 3-904 (e)(2)(iii) (1999); Billiot v. State, 655 So.2d 1, 12 (Miss. 1995); Singleton, 437 S.E.2d at 60; Tex. Crim. P. Code Ann. art. 46.04(k) (West Supp. 1999).[15]

We emphasize that the strictures of due process must be observed at the hearing. Ford, 477 U.S. at 414, 106 S. Ct. at 2604 (plurality opinion). As an initial matter, the prisoner must be given notice that an evidentiary hearing will be held. Harris, 789 P.2d at 71. Next, the prisoner must be afforded an opportunity to be heard and to present evidence relevant to the issue of competency at an adversarial

---

[15]The dissent would place the burden on the State to prove the prisoner's competency beyond a reasonable doubt. Such a rule finds no support in any other state statute or judicial decision relating to this issue. Moreover, such a rule is contrary to practice given that the prisoner is asserting incompetency "following a trial and sentencing hearing at which his sanity was either conceded or determined by the court." Ford, 477 U.S. at 426 n.6, 106 S.Ct. at 2610 n.6 (Powell, J., concurring).

proceeding at which the prisoner is entitled to cross-examine the State's witnesses. See Ford, 477 U.S. at 413-16, 106 S. Ct. at 2603-05 (plurality opinion); Harris, 789 P.2d at 71. Any procedure that unreasonably precludes the prisoner from attending and "presenting material relevant to [the question of] his sanity or bars consideration of that material by the factfinder is necessarily inadequate." Ford, 477 U.S. at 414, 106 S. Ct. at 2604 (plurality opinion). Therefore, the rules of evidence should not be applied to limit the admissibility of reliable evidence that is relevant to the issue of the prisoner's competency. Cf. Tenn. Code Ann. § 39-13-204(c) (Supp. 1999) (directing that the rules of evidence do not limit the admissibility of evidence at capital sentencing hearings); see also Fla. R. Crim. P. 3.812(d) (West Supp. 1999) (stating that the court shall not be strictly bound by the rules of evidence at a competency hearing).

In sum, we hold that the prisoner shall be given reasonable notice if an evidentiary hearing is to be held and that the prisoner shall be present at the hearing. The prisoner is presumed competent and, to prevail, must overcome the presumption by a preponderance of the evidence. The hearing shall be adversarial in nature, and the prisoner shall be allowed to present all evidence material and relevant to the issue of competency. See Harris, 789 P.2d at 72.

### F. Trial Court Decision: Form and Content

Within five days of the conclusion of the hearing, the trial judge shall file an order which shall contain detailed findings of fact and conclusions of law granting or denying the prisoner's petition. Although likely based upon expert medical and mental health testimony, the ultimate question as to whether the prisoner is competent is a question of fact. See Ford, 477 U.S. at 412, 106 S. Ct. at 2603 (plurality opinion) ("the ultimate decision will turn on the finding of a single fact . . ."); cf. Maggio v. Fulford, 462 U.S. 111, 103 S. Ct. 2261, 76 L. Ed. 2d 794 (1983)

(holding that competency to stand trial is a question of fact).  Therefore, in the written findings of fact, the trial court shall set out any undisputed facts, explain its assessment of the credibility of the various expert witnesses and their conflicting opinions, and include findings as to the prisoner's behavior during the hearing. Harris, 789 P.2d at 72.

## G. Appellate Review

Both the prisoner and the State have an interest in preventing erroneous determinations of the issue of a prisoner's competency to be executed.  As the Washington Supreme Court recognized, the State has the additional interest of ensuring that lawful decisions of capital sentencing juries are carried out.  Therefore, this Court will automatically review decisions of the trial court in competency proceedings arising out of this Court's order setting an execution date.  Harris, 789 P.2d at 72.

The appeal in this Court shall be filed with the Office of the Appellate Court Clerk in Nashville under the same cause number that was assigned to the motion of the State Attorney General to set an execution date.  The record of the competency proceedings in the  trial court shall be filed within ten days from the date on which an order is filed in the trial court either (1) denying a hearing on the ground that the prisoner has failed to make the required threshold showing or (2) ruling upon a petition after a hearing has been conducted.  The unsuccessful party in the trial court shall file an initial brief in this Court no later than five days from the day on which the record is filed.  A response brief shall be filed by the party prevailing in the trial court no later than five days from the day on which the initial brief is filed.  The State Attorney General shall represent the State on appeal.  Absent extraordinary circumstances, oral argument will not be granted.

This Court will expeditiously review the record and the briefs and render a

decision either by summary order or by a written opinion. Procedural issues, such as lack of proper notice, will be reviewed de novo as questions of law, but the trial court's finding on the issue of competency will be reviewed as a question of fact and presumed correct, unless the evidence in the record preponderates against the finding. See Tenn. R. App. P. 13(d).

If a prisoner is found to be incompetent, the execution date previously set by the order of remand will be stayed by this Court and a copy of the order staying the execution shall be provided to the prisoner's counsel, the Warden, the Governor, the district attorney general, and the State Attorney General.

If a prisoner is found to be competent, subsequent Ford claims will be disallowed unless the prisoner, by way of a motion for stay, provides this Court with an affidavit from a mental health professional showing that there has been a substantial change in the prisoner's mental health since the previous determination of competency was made and the showing is sufficient to raise a substantial question about the prisoner's competency to be executed. Cf. Ariz. Rev. Stat. Ann. § 13-4024(B) (West 1999).

### H. Subsequent Treatment and Monitoring

One of the most difficult procedural questions, and the one most in need of legislative response, is what is to be done with a prisoner who is not competent to be executed. Unless treatment is provided, the mental problem will likely persist. There are existing procedures in Tennessee for transferring a prisoner from the Department of Correction to a facility of the Department of Mental Health and Retardation, see Tenn. Code Ann. §§ 33-3-701 to -711 (1999 Supp.), however, these procedures may not apply to a death row inmate whose execution has been stayed due to

incompetency. As previously stated, this is an issue which needs to be clarified by legislation.

Regardless of whether treatment is provided, some procedure must exist for reviewing the prisoner's case to determine whether he or she has regained competency. Until and unless a statutory review procedure is adopted, the order staying execution will direct the parties to file in this Court every six months a status report which summarizes the prisoner's mental condition. Cf. Tenn. Code Ann. § 33-7-301(c) (Supp. 1999) (requires a report at six-month intervals where a defendant has been found incompetent to stand trial); cf. Ariz. Rev. Stat. Ann. § 13-4023(A) (West Supp. 1998) (requiring a report on a prisoner's treatment and status at sixty day intervals after the initial finding of incompetency); Ky. Rev. Stat. Ann. § 431.2135(4) (Michie Supp. 1998) (requiring reports once each month or more frequently if the court orders). When and if these submissions indicate that the prisoner has regained competency, this Court will remand the case to the trial court for a hearing to determine whether the prisoner has regained competency so that an execution date may be scheduled. Harris, 789 P.2d at 73. At the hearing, the State will bear the burden of proving competency by a preponderance of the evidence. See Singleton, 437 S.E.2d at 60 (holding that burden is on the State to prove by a preponderance of the evidence that a prisoner has regained competency).

## IV.

### SUMMARY

For the sake of clarity, below is a summary of the procedure set forth herein that a prisoner sentenced to death must follow in order to assert his or her common law and constitutional rights to challenge competency to be executed.

Motion of State Attorney General to set execution date is filed in this Court.

Ten (10) days thereafter prisoner files a response in this Court, raising the competency issue.

As expeditiously as possible after the response is filed, this Court enters an order which sets an execution date and remands the competency issue to the trial court.

No later than three (3) days from entry of the order of remand, the prisoner shall file a petition in the trial court which shall, among other things, set forth the names of any mental health professionals who would be available and willing to evaluate the prisoner if the trial court determines an evaluation is required.

No later than three (3) days from filing of the petition, the district attorney general shall file a response to the petition in the trial court which shall, among other things, set forth the names of any mental health professionals who would be available and willing to evaluate the prisoner if the trial court determines an evaluation is required.

No later than four (4) days after the response of the district attorney general is filed, the trial court shall decide if a hearing is warranted and if so, appoint mental health professionals to conduct an evaluation. If the trial court decides that a hearing is not warranted and enters an order denying the petition, the prisoner may appeal pursuant to the procedure set out under the heading "Appellate Review."

No later than ten (10) days after the mental health professionals are appointed, they shall file written evaluation reports in the trial court.

No later than ten (10) days after the evaluations are filed, the trial court shall hold and conclude a hearing.

No later than five (5) days after conclusion of the hearing, the trial court shall file an order containing written findings of fact and conclusions of law.

**Appellate Review**

No later than ten (10) days from the date of entry of the trial court's order, the record of the trial court proceeding shall be filed in this Court with the Office of the Appellate Court Clerk in Nashville.

No later than five (5) days thereafter, the brief of the party unsuccessful in the trial court shall be filed in this Court.

No later than five (5) days thereafter, the response brief of the prevailing party shall be filed in this Court.

As expeditiously as possible after the record and briefs are filed, this Court will render a decision either by a summary order or by a written opinion.

When a prisoner is found to be incompetent, this Court will enter an order staying the execution and directing the parties to file in this Court every six months a status report which summarizes the prisoner's mental condition.

When and if it appears from these reports that the prisoner has regained competency, a hearing will be held in the trial court, in the manner previously set out, to determine the issue of competency. The State will

have the burden of proving competency by a preponderance of the evidence.

Issues may, and no doubt, will, arise in competency proceedings which have not been addressed in this opinion. Such issues can and will be resolved on a case-by-case basis. We end our analysis by expressing our agreement with a statement made by the Washington Supreme Court with regard to the procedure it adopted for application in competency proceedings:

> It is particularly important that these procedures be followed in death penalty competency claims. Federal habeas corpus review of a death penalty case is nearly inevitable. As the [United States] Supreme Court has observed, in a habeas corpus proceeding, 'even a single federal judge may overturn the judgment of the highest court of a State insofar as it deals with the application of the United States Constitution or laws to the facts in question.' [Citation omitted.] As we have previously noted, however, the federal habeas court will accord state court findings of fact a presumption of correctness, and those factual contentions may not be relitigated in federal court. [Citation omitted.]

Harris, 789 P.2d at 72.


# V.

## CONCLUSION

We affirm the holding of the Court of Criminal Appeals that a claim that a prisoner is not competent to be executed cannot be raised in a proceeding under the Post-Conviction Procedure Act. Furthermore, applying the procedure set forth herein to the facts in this appeal, we conclude that the issue of competency to be executed is not ripe for determination because Van Tran's execution is not imminent. Although an execution date has been set in accordance with this Court's policy of expediting capital cases, Van Tran has not yet filed a petition for habeas corpus relief in federal court and therefore has not exhausted all remedies. As previously stated, execution is imminent in Tennessee only when a prisoner sentenced to death has unsuccessfully pursued all state and federal remedies for testing the validity and correctness of the prisoner's conviction and

-26-

sentence <u>and</u> this Court has set an execution date upon motion of the Attorney General.  Clearly, execution is not imminent and the question of whether Van Tran is competent to be executed is not ripe for determination.  Accordingly, we affirm the judgments of the trial court and the Court of Criminal Appeals on the separate grounds stated herein.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.
Holder, Barker, JJ.

**Concurring in Part, Dissenting in Part:**
Birch, J.