**Robert Glen COE, Plaintiff,**

**v.**

**Ricky BELL, in his Official Capacity as Warden of Riverbend Maximum Security Institution, Defendant.**

No. 3000246.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 3, 2000.

Robert L. Hutton, Glankler Brown, PLLC, Memphis, TN, for Robert Glen Coe, plaintiff.

Glenn Richard Pruden, Office of the Attorney General, Nashville, TN, for Ricky Bell, defendant.

## *MEMORANDUM*

TRAUGER, District Judge.

Before the court is Plaintiff Robert Glen Coe's Amended Emergency Complaint for Declaratory and Injunctive Relief and Application for Temporary Restraining Order (Docket Nos. 1, 17)[1] to which Defendant has responded (Docket Nos. 6, 24). Plaintiff has also filed a Memorandum of Authority in Support of his Complaint and Application (Docket No. 9) to which the Defendant has replied (Docket No. 14). A hearing was held on this matter on April 3, 2000 at 10:00 a.m.

### *STANDARD FOR ISSUANCE OF AN INJUNCTION*

In ruling on a motion for preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, a district court must balance the following factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the injunction; (3) whether the issuance of an injunction would cause substantial harm to the nonmoving party; and (4) whether an injunction would serve the public interest. *See Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir. 1999).

1. On March 31, 2000, the Plaintiff was allowed to amend his Complaint to add a request that a mental health professional, in addition to his counsel, be present at his execution.

2. In his Supplemental Affidavit filed March 31, 2000, Defendant states that "Mr. Coe's attorneys will be permitted to remain in the building where the execution will take place in an office equipped with an outside tele-

### *DISCUSSION*

Plaintiff seeks an injunction prohibiting Defendant from preventing counsel and a mental health professional from being present with access to a telephone at his execution. Plaintiff contends that he will not have any meaningful way, once he "is strapped on a gurney," to present to the court any legitimate *Ford* claim of incompetency to be executed or Eighth Amendment claim against cruel and unusual treatment. (Docket No. 1 at 5) The defendant has responded to the right to assert a *Ford* claim but not to the right to assert a cruel and unusual treatment claim. *See* Docket No. 14.

On March 17, 2000, Plaintiff's counsel, Robert L. Hutton, wrote a letter to Defendant seeking to "have at least one counsel observe the execution process who has access to a telephone, or who is allowed to have a cellular phone, to insure the execution comports with the Eighth Amendment." (Docket No. 1, Ex. 1) In denying Plaintiff's counsel's request,[2] Defendant stated, "[c]oncerning your request that at least counsel be able to observe the execution process, I am afraid this is not possible. T.C.A. § 40–23–116 stipulates who may witness the execution and the inmate's counsel is not permitted to be present." (Docket No. 1, Ex. 2)

According to the Administrative Policies and Procedures for the State of Tennessee, Department of Corrections, "[t]he attorney of record or other Tennessee licensed attorney retained by the inmate may visit the inmate up to one (1) hour before the time of execution." See T.D.O.C. Policy, § 506.16.2, VI.C.3. Furthermore, the statutory provision concerning the presence of witnesses at an execution does not provide

phone line." (Docket No. 20 at ¶ 6) In the hour before his execution, "Mr. Coe will be taken to his holding cell, where he will remain until his execution. During the period from 12:00 a.m. until 1:00 a.m., he will be permitted to confer with his attorney by telephone from his cell or he will be permitted to go to the non-contact visitation room to confer with his attorney, should Mr. Coe make a request." (Docket No. 20 at ¶ 4)

for the presence of counsel at an execution and does not allow the individual sentenced to death to choose any witnesses to his or her own execution. *See* T.C.A. § 40–23–116.[3]

It is clear that prisoners have a constitutional right to have meaningful access to the courts pursuant to the First and Fourteenth Amendments of the United States Constitution. *See Lewis v. Casey,* 518 U.S. 343, 347, 116 S.Ct. 2174, 2178, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (holding that "inmate access [must be] adequate, effective and meaningful"); *Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999). As stated in *Lewis,* "[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts ...." *Lewis,* 518 U.S. at 349, 116 S.Ct. 2174. In *Thaddeus–X,* the Sixth Court acknowledged that "[t]he importance of this right to incarcerated individuals is evident and can hardly be overstated:

> The right to file for legal redress in the courts is as valuable to a prisoner as to any other citizen. Indeed, for the prisoner it is more valuable. Inasmuch as one convicted of a serious crime and imprisoned usually is divested of the franchise, the right to file a court action stands ... as his most 'fundamental political right, because preservative of all rights.' "

*Thaddeus–X,* 175 F.3d at 391 (quoting *Hudson v. McMillian,* 503 U.S. 1, 15, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (Blackmun, J., concurring in the judgment), quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).

■ In evaluating a claim of denial of meaningful access to the courts, this court is to "weigh[ ] the interests of the prison as an institution (in such matters as security and effective operation) with the constitutional rights retained by the inmates." *Id.* at 390, 6 S.Ct. 1064. *See also Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In order to raise a claim, a prisoner must demonstrate "actual injury." *See Lewis,* 518 U.S. at 349, 116 S.Ct. 2174 ("It is the role of courts to provide relief to claimants ... who have suffered, or will imminently suffer, actual harm ...."), 353 (prisoner must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded"). *See also Hadix v. Johnson,* 182 F.3d 400, 404–06 (6th Cir.1999).

### A. *Right to assert Eighth Amendment Ford claim*

■ Under *Ford* and the Eighth Amendment, there is a prohibition against the execution of the insane. *See Ford v. Wainwright,* 477 U.S. 399, 409–10, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Tennessee has defined the standard for com-

---

**3.** T.C.A. provides:

> (a) ... The only witnesses entitled to be present at the carrying out of such death sentences are:
> (1) The warden of the state penitentiary or the warden's duly authorized deputy;
> (2) The sheriff of the county in which the crime was committed;
> (3) A priest or minister of the gospel who has been preparing the condemned person for death;
> (4) The prison physician;
> (5) Such attendants chosen and selected by the warden of the state penitentiary as may be necessary to properly carry out the execution of the death sentence;
> (6) A total of seven (7) members of the print, radio and television news media selected in accordance with the rules and

> regulations promulgated by the department of correction....
> (7) Immediate family members of the victim who are eighteen (18) years of age or older. Such immediate family members shall include the spouse, child (by birth or adoption), stepchild, stepparent, parent, grandparent or sibling of the victim; provided, that members of the family of the condemned prisoner may be present and witness the execution.
> (b) No other person or persons than those mentioned in subsection (a) are allowed or permitted to be present at the carrying out of the death sentence. It is a Class C misdemeanor for the warden of the state penitentiary to permit any other person or persons than those provided for in subsection (a) to be present at such legal execution.

petency to be executed in *Van Tran v. State,* 6 S.W.3d 257 (1999). Plaintiff contends that he has a constitutional right not to be executed if he is incompetent under the *Van Tran* standard *"at the time of his execution."* (Docket No. 1 at 5 (emphasis in original)) For this contention, Plaintiff cites only to *Ford,* with no page reference, and concedes that there is no other authority in support of this proposition. (Docket No. 9 at 2) The only possible support in *Ford* is Justice O'Connor's statement:

> [b]y definition, this interest [in avoiding execution while incompetent] can never be conclusively and finally determined: Regardless of the number of prior adjudications of the issue, *until the very moment of execution* the prisoner can claim that he has become insane sometime after the previous determination to the contrary. Hazard & Louisell, Death, the State and the Insane: Stay of Execution, 9 U.C.L.A. L.REV. 381, 399–400 (1962).

*Ford,* 477 U.S. at 429, 106 S.Ct. 2595 (O'Connor, J., concurring in the result in part and dissenting in part) (emphasis added).

The plaintiff's reliance on this passage in *Ford* is misplaced for several reasons. First, Justice O'Connor was not writing for the court in this separate opinion. Second, this is an observation from a law review article made in dicta and based upon no legal precedent. This statement does not confer upon a prisoner about to be executed the right to assert his or her incompetency until the moment the punishment has been successfully carried out.

The Tennessee Supreme Court has held that the determination of competency to be executed must be made while execution is "imminent" but not before the issue is "ripe." *See Van Tran,* 6 S.W.3d at 267. That court has set out a strict timetable that attempts to take into account this problematic concept. Its guidelines provide that, once competency has been determined, a prisoner can only present a subsequent claim of incompetency by providing that court with an affidavit from a mental health professional "showing that there has been a substantial change in the prisoner's mental health since the previous determination of competency was made and the showing is sufficient to raise a substantial question about the prisoner's competency to be executed." *Van Tran,* 6 S.W.3d at 272. This obviously cannot be done during the last hour before an execution.

Because the present statute[4] governing who may be present at an execution was in place when *Van Tran* was written, that statute had to have been in the contemplation of the Tennessee Supreme Court when it was promulgating the procedures to be followed for the determination of a prisoner's competency to be executed. That statute does not provide for the presence of either the prisoner's counsel or a mental health professional at the execution. Therefore, the Tennessee Supreme Court has determined that the "substantial change in the prisoner's mental health" must occur, be substantiated by a mental health professional, and presented to the court within some reasonable time frame before the execution. A day—perhaps. An hour—definitely not.[5] These procedures comport with due process, the Eighth Amendment, and common sense.[6]

Despite Plaintiff's assertions to the contrary, the state courts have held that Mr.

---

4. T.C.A. 40–23–116.

5. Even if both counsel and a mental health professional were present, the feasibility of drafting an affidavit, presenting it to the Tennessee Supreme Court and securing redress from that court within an hour of an execution is remote.

6. The fact that a person faced with certain death by execution might become fearful,

overcome by strong emotions or even panic-stricken does not mean that he or she is incompetent under Tennessee law to be executed. Perhaps it was to avoid the presentation of *Ford* claims based upon these predictable emotional responses to execution that the Tennessee Supreme Court structured the provision about subsequent *Ford* claims in the way it did.

Coe *is* competent to be executed. *See* Trial Ct. Op. at 28; *Coe v. State,* 2000 WL 246425, at *35 (Tenn. Mar.6, 2000). That finding took into account the testimony of Dr. Kenner that Mr. Coe will decompensate and dissociate as the execution draws closer. The hearing concluded on January 28, 2000, only slightly more than two months before Mr. Coe's present execution date. This court holds that that determination has been made at a time when execution is "imminent." And there is a presumption that Mr. Coe, having been found to be competent to be executed, will be sane at the time of his execution. *Ford,* 477 U.S. at 426, 106 S.Ct. 2595 ("The State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out ...."). The court denies Plaintiff's request for injunctive relief on his claim of denial of access to the courts to raise a *Ford* claim.

### B. *Right to assert Eighth Amendment cruel and unusual punishment claim*

█ Plaintiff has an Eighth Amendment right not to be subjected to cruel and unusual punishment, and substantial caselaw supports the contention that this right attaches until his successful execution. *See Wilkerson v. Utah,* 99 U.S. 130, 25 L.Ed. 345 (1878) (while holding execution by shooting not cruel and unusual punishment, stating that cruel and unusual punishment includes "torture" and "unnecessary cruelty"); *State v. Perry,* 610 So.2d 746 (La.1992) (holding involuntary medication of incompetent death row prisoner violates state constitutional prohibition against cruel and unusual punishment and right to privacy where medication administered for neither protection nor medical interest of death row prisoner); *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (Eighth Amendment violated by the execution of individuals who were under age 16 when crime committed); *Karl Lagrand v. Stewart,* 173 F.3d 1144 (9th Cir.) (holding execution by lethal gas unconstitutional), *stay vacated,* 525 U.S. 1173, 119 S.Ct. 1107, 143 L.Ed.2d 106, *cert. dismissed,* —— U.S. ——, 119 S.Ct. 1450, 143 L.Ed.2d 538 (1999); *Rupe v. Wood,* 863 F.Supp. 1315 (W.D.Wash. 1994) (finding that, although death by hanging is not generally unconstitutional, where there is significant risk of decapitation in hanging of obese death row inmate, hanging violates Eighth Amendment), *aff'd,* 93 F.3d 1434 (9th Cir.1996) (issue moot because of change in Washington capital statute), *cert. denied,* 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997). Plaintiff's right to meaningful access to the courts to assert that right requires that counsel have some access to the prisoner during the last hour before the execution and be permitted to witness his execution and have access to a telephone until execution has been successfully carried out.

Plaintiff Coe has met the injunction standard on this claim. This court finds that Plaintiff's right to access the courts to raise an Eighth Amendment claim of cruel and unusual punishment is decidedly not frivolous, and his interest in being free from cruel and unusual punishment is paramount. Plaintiff will be irreparably harmed if he is denied relief. The state certainly has no legitimate interest in depriving the Plaintiff of access to the courts to assert a claim of cruel and unusual treatment. Finally, the public interest is best served by insuring that executions are carried out in a constitutional manner.

This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself. However, given society's (and the state's) interest in assuring that capital punishment is carried out in a humane manner and the minimal inconvenience to the state, this court finds the plaintiff's position well taken.[7]

---

7. Even though the right may be difficult to assert, the fact that the prisoner's counsel is witnessing the execution with access to a tele-phone will serve as a deterrence to the remote possibility of a state actor's implementing an execution in a cruel and unusual manner.

This court holds that the plaintiff has the right under the First, Eighth and Fourteenth Amendments to have some access to his counsel during the last hour before the execution[8] and to have his counsel witness the execution, from either the witness room or a room with closed circuit live television transmission. His counsel must have access to a telephone with an unimpeded outside line at the time that he or she witnesses the execution.

Defendant has asserted that allowing counsel to be present will put him in the position of committing a misdemeanor under T.C.A. 40–23–116. This court finds that allowing counsel to witness the execution will not force the defendant to commit a misdemeanor. Under T.C.A. § 40–23–116(a)(5), "[s]uch attendants chosen and selected by the warden of the state penitentiary as may be necessary to properly carry out the execution of the death sentence" may also attend the execution as witnesses. The prisoner's counsel is found by this court to be "necessary to properly [and constitutionally] carry out the execution of the death sentence." Accordingly, this court's granting of injunctive relief will not interfere with the state's authority to enforce its criminal statutes.

### CONCLUSION

In conclusion, this court finds that Plaintiff is an entitled to an injunction prohibiting Defendant from preventing his counsel from witnessing Plaintiff's execution in order to safeguard Plaintiff's constitutional right of access to the courts to address violations of his Eighth Amendment right against cruel and unusual punishment. Accordingly, this court grants Plaintiff's request for injunctive relief in this respect.

It is so Ordered.

---

8. An open telephone line between the prisoner in the holding cell and his counsel in another room, where the prisoner is not required to dial a number to reach his counsel, will suffice.