*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0130P (6th Cir.)
File Name: 00a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

Robert Glen Coe,
*Petitioner-Appellant,*

*v.*

Ricky Bell, Warden
*Respondent-Appellee.*



No. 00-5419

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00239—Aleta A. Trauger, District Judge.

Submitted: April 3, 2000

Decided and Filed: April 11, 2000

Before: BOGGS, NORRIS, and MOORE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Henry B. Martin, Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Gordon W. Smith, Michael E. Moore, Glenn R. Pruden, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Robert Glen Coe appeals the denial of habeas relief regarding the Tennessee state courts' determination that he is competent to be executed pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986).  Because we conclude that the Tennessee state courts' proceedings assessing Coe's *Ford* claims satisfy the requirements of due process and do not involve an unreasonable application of Supreme Court precedent, we **AFFIRM** the district court's denial of Coe's application for a writ of habeas corpus.

## I.  FACTS AND PROCEDURE

In 1981, Robert Glen Coe received the death sentence after a Tennessee jury convicted him of first-degree murder.  Once Coe had exhausted all of his state and federal appeals of his conviction and sentence, the Tennessee Attorney General filed a motion before the Tennessee Supreme Court requesting an execution date.  On December 15, 1999, the Tennessee Supreme Court set Coe's execution date for March 23, 2000, and ordered a remand of the case to the Tennessee trial court that had presided over Coe's conviction for a determination of his competency to be executed under *Ford*. *Coe v. State*, 11 S.W.3d 118, 119-20 (Tenn. 1999).  The trial court determined that Coe was entitled to a hearing on this issue because he had satisfied a threshold showing that there existed a genuine disputed issue regarding his competency to be executed.  The hearing was held from January 24 to January 28, 2000.  The trial court then issued a finding on February 2, 2000 that Coe is competent to be executed.  The Tennessee Supreme Court affirmed this finding on March 6, 2000.  *Coe v. State*, No. W1999-01313-SC-DPE-PD, 2000 WL 246425 (Tenn. Mar. 6, 2000), *cert. denied*, -- S. Ct. --, 2000 WL 295230 (Mar. 22, 2000).

On March 16, 2000, Coe filed in federal district court an application for a writ of habeas corpus challenging the Tennessee courts' determination that he is competent for execution under *Ford.* In a thorough opinion examining Coe's several claims issued on March 29, 2000, the district court refused to grant Coe's application for habeas relief. Coe filed a notice of appeal and sought a certificate of appealability from the district court, which the district court granted. The Tennessee Supreme Court on March 30, 2000 set Coe's execution for April 5, 2000.

After we requested and received briefs from the parties on April 3, 2000, we granted a stay of execution to evaluate fully the merits and to prevent Coe's scheduled April 5, 2000 execution from mooting his appeal. We directed the district court to make its record available for our review and asked the parties to designate particular parts of the record pertinent to this appeal. Because of the ample briefing and record and because of the inherent need for expedited review and resolution of a *Ford* claim, further briefing and an appellate oral argument are not necessary. *See* 6TH CIR. R. 22(c)(7).

## II.  ANALYSIS

### A.  Adequacy of State Procedures

#### 1.  *Ford v. Wainwright*

This circuit has never been presented with the opportunity to examine the adequacy of a state's procedures to determine whether a death-row prisoner is competent to be executed pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986). In *Ford*, the Supreme Court held that the Eighth Amendment prohibits a state from executing a prisoner who is insane. *See* 477 U.S. at 409-10. A majority of the Justices did not reach the issues of what constitutes insanity in this context or what state procedures would adequately address a prisoner's *Ford* claim. Therefore, this court must look to the position taken by Justice Powell, who concurred in the judgment on the most narrow grounds, for the Court's holding on these issues. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a

fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

First, Justice Powell concluded that prisoners will be considered insane for the purposes of competency to be executed when they "are unaware of the punishment they are about to suffer and why they are to suffer it." *Ford*, 477 U.S. at 422 (Powell, J., concurring). In *Ford*, a psychiatrist's findings showed that the death-row prisoner believed that he would not be executed but rather understood the death penalty to have been invalidated. This led Justice Powell to conclude that "[i]f this assessment is correct, petitioner cannot connect his execution to the crime for which he was convicted" as required under the competency standard. *Id.* at 422-23 (Powell, J., concurring). It appears that the Supreme Court has accepted this competency standard as the *Ford* holding. *See Penry v. Lynaugh*, 492 U.S. 302, 333 (1989) (noting that "under *Ford v. Wainwright*, someone who is 'unaware of the punishment they are about to suffer and why they are to suffer it' cannot be executed" (citation omitted)).

Second, Justice Powell determined that in evaluating a prisoner's competency-to-be-executed claim, the state must comply with the Due Process Clause and that, under these particular circumstances, the clause requires the state to provide the prisoner with a "fair hearing." *Ford*, 477 U.S. at 424 (Powell, J., concurring). In *Ford*, the Governor of Florida was responsible for deciding a prisoner's competency to be executed and for appointing a panel of three psychiatrists to evaluate the prisoner. The prisoner was not given the opportunity to present any material for the Governor to consider in making a competency determination. Justice Powell noted that the opportunity to be heard is a "fundamental requisite" of due process. *Id.* (Powell, J., concurring). The prisoner was not given this fundamental opportunity to be heard, and the decision on his competency

and sentenced for a capital offense, however, we see no reason why a prisoner's competency to be executed should be treated more strictly than a criminal defendant's competency to stand trial for the purpose of due process. Therefore, the Tennessee courts' placement of the burden of proof on Coe to establish his lack of competency to be executed comports with the procedural protections of the Due Process Clause and is not an unreasonable application of Supreme Court precedent.

**4. Other Procedural Claims**

Finally, Coe raises a number of other challenges to the procedures used by the Tennessee courts in deciding his competency. Given Justice Powell's opinion in *Ford*, we believe that "[a]s long as basic fairness is observed" in a prisoner's competency-to-be-executed determination, a state has "substantial leeway to determine what process best balances the various interests at stake." *Ford*, 477 U.S. at 427 (Powell, J., concurring). Accordingly, we must give the Tennessee courts substantial discretion in fashioning the procedures employed in Coe's competency proceedings. Where Coe was given an extensive hearing over several days and was given the opportunity to present evidence and to cross-examine the state's mental health experts, it is not our role to second guess all of the procedural decisions made by the Tennessee courts. Moreover, we note that the district court ably addressed Coe's claims in a thorough 42-page opinion denying habeas relief. It would serve no jurisprudential purpose to discuss these claims any further.

### III. CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of Coe's application for a writ of habeas corpus. We hereby lift the stay of execution.

Although the Supreme Court has never established who bears the burden of proof in a competency-to-be-executed claim,[5] it has held that a California statute requiring a criminal defendant to prove by a preponderance of the evidence that he is not competent to stand trial does not violate due process. *See Medina v. California*, 505 U.S. 437, 449 (1992). The Court specifically rejected the use of the *Mathews v. Eldridge* balancing test for evaluating the adequacy of state procedures in this context because it "does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process." *Id*. at 443. Rather, the Court instructed that a state's procedure regarding the burden of proof in the criminal context will not be prohibited unless "'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id*. at 445 (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977) (quotations omitted)). After examining the historical and modern treatment of the burden of proof in competency proceedings and the requirements of "fundamental fairness," the Court concluded that placing this burden on a criminal defendant satisfies due process. *See id.* at 446-49.

In accordance with the Supreme Court's holding in *Medina*, we conclude that the placement of the burden of proof on Coe to prove by a preponderance of the evidence that he is incompetent to be executed does not violate due process. We recognize that determining the competency of a criminal defendant facing trial involves different interests than determining the competency of a prisoner facing execution. In light of the fact that a prisoner on death row has previously been found competent to stand trial and has been convicted

---

[5]We note that in his concurring opinion, Justice Powell states that "it is the defendant and not the State who seeks to overcome the presumption that he is sane." *Ford*, 477 U.S. at 426 n.6 (Powell, J., concurring). This statement, however, was made in the context of his conclusion that the state "may require a substantial threshold showing of insanity merely to trigger the hearing process." *Id.* at 426 (Powell, J., concurring).

was made solely on the basis of the findings from the state-appointed experts. Justice Powell stated that "[s]uch a procedure invites arbitrariness and error by preventing the affected parties from offering contrary medical evidence or even from explaining the inadequacies of the State's examinations" and "does not, therefore, comport with due process." *Id.* (Powell, J., concurring).

Justice Powell cautioned, however, that he "would not require the kind of full-scale 'sanity trial'" he thought implied in Justice Marshall's opinion. *Id.* at 425 (Powell, J., concurring).[1] Although a prisoner is entitled to due process on a *Ford* claim, "[d]ue process is a flexible concept" and its procedural protections may vary depending on the context of a particular situation. *Id.* (Powell, J., concurring). A competency-to-be-executed claim only raises the issue of *when* a prisoner will be competent for execution and does not challenge the validity of the prisoner's conviction or sentence. Although an important question, "it is not comparable to the antecedent question whether [the prisoner] should be

---

[1]In an opinion joined by three other Justices, Justice Marshall criticized the Florida procedure for failing to allow a prisoner to present relevant material to the factfinder or to challenge the opinions of the state-appointed experts and for placing the decision solely within the executive branch. *Id.* at 413-16 (Marshall, J., plurality opinion). Although Justice Marshall asserted that states should be left with the task of formulating the proper procedures, he also stated that it is "important that the adversary presentation of relevant information be as unrestricted as possible" and that "the manner of selecting and using the experts responsible for producing [the evidence] be conducive to the formation of neutral, sound, and professional judgments as to the prisoner's ability to comprehend the nature of the penalty." *Id.* at 417 (Marshall, J., plurality opinion). Justice Marshall explicitly stated that "We do not here suggest that only a full trial on the issue of sanity will suffice to protect the federal interests," and he recognized that "legitimate pragmatic considerations may also supply the boundaries of the procedural safeguards that feasibly can be provided." *Id.* at 416-17 (Marshall, J., plurality opinion). Thus, five justices agreed that a fair hearing but not necessarily a full trial was required if a prisoner made a substantial threshold showing of incompetency to be executed. *See id.* at 417 (Marshall, J., plurality opinion), 426 (Powell, J., concurring).

executed at all." *Id.* (Powell, J., concurring). Therefore, Justice Powell asserted that the heightened procedural protections usually required in capital cases are not applicable in this context. *See id.* (Powell, J., concurring). In addition, because the prisoner necessarily was found competent to stand trial in order to be convicted, Justice Powell concluded that "[t]he State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." *Id.* at 426 (Powell, J., concurring) (footnote omitted). Finally, Justice Powell noted that the competency determination requires a "basically subjective judgment" based on "expert analysis in a discipline fraught with 'subtleties and nuances.'" *Id.* (Powell, J., concurring) (quoting *Addington v. Texas*, 441 U.S. 418, 430 (1979)). Therefore, "ordinary adversarial procedures – complete with live testimony, cross-examination, and oral argument by counsel – are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity." *Id.* (Powell, J., concurring).

Accordingly, Justice Powell concluded that a state need not carry out a formal trial to determine a prisoner's competency. At a minimum, he stated, "[t]he State should provide an impartial officer or board that can receive evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination." *Id.* at 427 (Powell, J., concurring). However, "[b]eyond these basic requirements, the States should have substantial leeway to determine what process best balances the various interests at stake" as long as the states observe the requirements of "basic fairness" under the Due Process Clause. *Id.* (Powell, J., concurring).

### 2. Tennessee's *Ford* Procedures

Invoking its inherent supervisory authority and with the *Ford* decision as guidance, the Tennessee Supreme Court recently adopted and set forth the procedures that a death-row

at 44. We conclude, however, that the Tennessee trial court properly followed Justice Powell's competency standard as adopted and applied in *Van Tran* and determined that Coe is aware of his imminent execution and the reason for it, showing that Coe has made the requisite connection between his crime and his punishment.[4]

### 3. Burden of Proof

Coe also argues that the Tennessee courts erred in following *Van Tran*'s placement of the burden of proof on Coe to prove his incompetency to be executed by a preponderance of the evidence rather than placing this burden on the state of Tennessee. To support his argument, Coe asserts that "the burden of proof must reflect the allocation of error under the circumstances" and cites to *Addington v. Texas*, 441 U.S. 418 (1979), and *Mathews v. Eldridge*, 424 U.S. 319 (1976) for support. Memorandum of Law in Support of Stay at 82. He also states that because his "mental state fluctuates, it is not proper to require him to bear the burden of proof." *Id.* The *Addington* decision, however, dealt with the proper standard for a civil commitment proceeding not for a competency determination. *See* 441 U.S. at 425.

---

[4] In support of his argument, Coe cites to Justice Marshall's statement in *Ford* that it is essential "that the manner of selecting and using the experts responsible for producing [mental health evidence] be conducive to the formation of neutral, sound, and professional judgments as to the prisoner's ability to *comprehend* the nature of the penalty." *Ford*, 477 U.S. at 417 (Marshall, J., plurality opinion) (emphasis added). At no other point in his opinion does Justice Marshall set forth what he considers to be the proper standard for competency. We cannot conclude that he meant to do so with this one statement. Moreover, even if we were to agree that Coe must comprehend the nature of the death penalty, we believe that the Tennessee Supreme Court correctly concluded that Coe does indeed understand and comprehend the death penalty. The court pointed out, for example, that Coe has chosen a method of execution and has refused a sedative because he "think[s] there might be a God, and I've got enough to deal with him, without being drunk on Valium." *Coe v. State*, No. W1999-01313-SC-DPE-PD, 2000 WL 246425, at * 25 (Tenn. Mar. 6, 2000), *cert. denied*, -- S. Ct. --, 2000 WL 295230 (Mar. 22, 2000).

pleading guilty or for waiving the right to trial is the same as the competency standard for standing trial. In a concurring opinion, Justice Kennedy asserted, "[t]he Due Process Clause does not mandate different standards of competency at various stages of or for different decisions made during the criminal proceedings." *Id.* at 404 (Kennedy, J., concurring). It appears from his opinion, however, that Justice Kennedy was concerned that the same standard be applied from the time of a defendant's arraignment through his sentencing. *See id.* at 404-05 (Kennedy, J., concurring). Because competency to be executed involves different interests than competency to stand trial in the first instance, we do not believe that a state rigidly must apply the competency-to-stand-trial standard in this context where it does not make sense in modern practice.

Moreover, the Supreme Court seems to have accepted Justice Powell's competency standard as the *Ford* holding. *See Penry v. Lynaugh*, 492 U.S. 302, 333 (1989) (noting that "under *Ford v. Wainwright*, someone who is 'unaware of the punishment they are about to suffer and why they are to suffer it' cannot be executed" (citation omitted)). Therefore, we conclude that the *Van Tran* opinion's adoption of Justice Powell's standard, that "only those who are unaware of the punishment they are about to suffer and the reason they are to suffer it are entitled to a reprieve," satisfies due process and is not an unreasonable interpretation of Supreme Court precedent. *Van Tran*, 6 S.W.3d at 266 (adopting the "cognitive" test).

We note that Coe also challenges the Tennessee trial court's application of the *Van Tran* standard in his case. In its ruling on Coe's competency, the trial court stated, "Petitioner *realizes* he is facing execution, and that he *knows* it is because he has been convicted of murdering a little girl." *Coe v. State*, No. B-73812, slip op. at 27 (Tenn. Crim. Ct. Feb. 2, 2000) (emphasis added). Coe argues that the trial court impermissibly relied on Coe's *knowledge* that he is to be executed for his murder conviction rather than Coe's *comprehension* of the sentence and its implications. *See* Petition for Writ of Habeas Corpus / Complaint for Relief

prisoner must follow to challenge his competency to be executed. *See Van Tran v. State*, 6 S.W.3d 257, 265 (Tenn. 1999). First, the court adopted Justice Powell's standard for competency and held that "under Tennessee law a prisoner is not competent to be executed if the prisoner lacks the mental capacity to understand the fact of the impending execution and the reason for it." *Id.* at 266.

Next the court established the procedures to be used in Tennessee. After the State Attorney General moves the Tennessee Supreme Court to set an execution date, the prisoner must raise the issue of competency in his response to the motion within the ten-day period for response. If such a motion is made, and the Tennessee Supreme Court sets an execution date, the prisoner's competency claim will be remanded to the trial court where the prisoner was originally tried and sentenced. Within three days of the entry of the remand order, the prisoner must file a petition with the trial court setting forth the factual allegations of incompetence along with supporting affidavits, records, or other materials and a list of any mental health professionals who would be available and willing to testify on the prisoner's behalf. *See id.* at 267-68. The district attorney general must file a response within three days. Within four days the trial court then must decide whether the prisoner has made the required threshold showing of incompetence in order to receive a hearing as suggested by the opinions of Justice Powell and Justice Marshall. *See id.* at 268 (citing *Ford*, 477 U.S. at 417 (Marshall, J., plurality opinion); 477 U.S. at 426 (Powell, J., concurring)). Noting that the Supreme Court did not indicate what would satisfy the threshold showing, the Tennessee Supreme Court looked to *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985), cited favorably in Justice Powell's concurring opinion, in which the Court concluded that a defendant must make a substantial showing of his insanity before due process requires the state to appoint a defense psychiatrist at its expense. It also examined its own cases, applying *Ake*, which require that before a mental health expert will be appointed to evaluate a defendant's competency to stand trial, the defendant must point to the facts and circumstances of his

particular case which "warrant a belief that the defendant is incompetent to stand trial." *Van Tran*, 6 S.W.3d at 268. Accordingly, the Tennessee Supreme Court held that the burden is on the prisoner to present "affidavits, depositions, medical reports, or other credible evidence sufficient to demonstrate that there exists a genuine question regarding petitioner's present competency." *Id.* at 269. The court also emphasized that pursuant to the nature of a *Ford* claim, the prisoner must submit some evidence from recent mental evaluations or observations relating to his present competency. *See id.*

If the prisoner satisfies this threshold showing for a hearing, the trial court must appoint "at least one, but no more than two, mental health professionals from each list submitted by the respective parties." *Id.* The experts then must submit written reports to the trial court. Within ten days after the filing of the mental health professionals' reports, the trial court is required to hold a hearing to determine competency. No jury is impaneled. At the hearing, the prisoner has the burden of proving by a preponderance of the evidence his incompetency to be executed. *See id.* at 270-71. Adopting the more stringent requirements in Justice Marshall's opinion in *Ford*, the Tennessee Supreme Court "emphasize[d] that the strictures of due process must be observed at the hearing." *Id.* at 271. A "prisoner must be given notice that an evidentiary hearing will be held" and "must be afforded an opportunity to be heard and to present evidence relevant to the issue of competency at an adversarial proceeding at which the prisoner is entitled to cross-examine the State's witnesses." *Id.* In order to satisfy Justice Marshall's determination that a prisoner should not be barred from presenting relevant material for the factfinder's consideration, the court stated that "the rules of evidence should not be applied to limit the admissibility of reliable evidence that is relevant to the issue of the prisoner's competency." *Id.*

After the hearing, the trial court must file an order with detailed findings of fact and conclusions of law granting or denying the prisoner's *Ford* petition. The Tennessee

sense in modern practice. First, he noted that criminal defendants are afforded broader constitutional guarantees than at common law, including the right to effective assistance of counsel at trial and on appeal and extensive judicial review through direct appeal and state and federal collateral review. "It is thus unlikely indeed that a defendant today could go to his death with knowledge of undiscovered trial error that might set him free." *Id.* at 420 (Powell, J., concurring). In addition, Justice Powell observed that "in cases tried at common law execution often followed fairly quickly after trial, so that incompetence at the time of execution was linked as a practical matter with incompetence at the trial itself." *Id.* at 420-21 (Powell, J., concurring). Justice Powell then concluded that "[t]he more general concern of the common law – that executions of the insane are simply cruel – retains its vitality." *Id.* at 421 (Powell, J., concurring). Furthermore, "one of the death penalty's critical justifications, its retributive force, depends on the defendant's awareness of the penalty's existence and purpose." *Id.* (Powell, J., concurring). In order to achieve this justification, Powell instructed that prisoners should be considered insane for the purpose of execution if they "are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422 (Powell, J., concurring).

We agree that a prisoner's ability to assist in his defense is not a necessary element to a determination of competency to be executed. Moreover, Coe has not shown how a prisoner could assist his counsel, a mental health professional, or the trial judge in deciding on his competency when the prisoner's very competency is the matter at issue.

In arguing that the common law standard governing the modern standard for competency to stand trial, which includes the "assistance" inquiry, also applies in a competency-to-be-executed proceeding, Coe asserts that the Supreme Court has held that the standard for competency does not change depending on the stage of the criminal proceedings. He cites to *Godinez v. Moran*, 509 U.S. 389, 398 (1993), in which the Supreme Court concluded that the competency standard for

since the previous determination of competency was made and the showing is sufficient to raise a substantial question about the prisoner's competency to be executed.

*Van Tran*, 6 S.W.3d at 272. This state procedure adequately addresses the situation in which a prisoner's competency changes after the Tennessee state courts make their competency determination by requiring the prisoner to establish a substantial change in his competency. In light of the fact that two state courts have already made a determination of Coe's competency to be executed, we conclude that Tennessee's requirement that he make a threshold showing of a "substantial change" comports with notions of basic fairness.

In sum, because the procedures followed by the Tennessee courts in this case satisfy the requirements of due process, we cannot conclude that they represent an unreasonable application of the *Ford* opinion.

## 2. Standard of Competency

Coe also asserts that the Tennessee courts applied an improper standard of competency in deciding his competency to be executed. As discussed above in Part II.A.2 *supra*, in *Van Tran* the Tennessee Supreme Court adopted the competency standard advocated by Justice Powell's concurring opinion in *Ford*. In determining the proper standard, Justice Powell looked for guidance in the common law tradition and in the modern practice of prohibiting the execution of the insane. He noted that there were differing justifications at common law for not executing insane criminals. One justification, also applied in the context of competency to stand trial, was that a prisoner must be competent to be executed so that he may assist in his defense. *See Ford*, 477 U.S. at 419 (Powell, J., concurring) ("'if after judgment he become of *non sane memory*, his execution shall be spared; for were he of sound memory he might allege somewhat in stay of judgment or execution'" (quoting 1 M. HALE, PLEAS OF THE CROWN 35 (1736)). Justice Powell, however, concluded that this justification does not make

Supreme Court concluded that a prisoner's competency to be executed is a question of fact and therefore the trial court must in its findings of fact "set out any undisputed facts, explain its assessment of the credibility of the various expert witnesses and their conflicting opinions, and include findings as to the prisoner's behavior during the hearing." *Id.* The Tennessee Supreme Court automatically reviews the trial court's competency determination, which as an issue of fact is presumed correct "unless the evidence in the record preponderates against the finding." *Id.* at 272. If a prisoner is found competent to be executed, he will not be allowed to bring a subsequent *Ford* claim unless he provides to the Tennessee Supreme Court "an affidavit from a mental health professional showing that there has been a substantial change in the prisoner's mental health since the previous determination of competency was made and the showing is sufficient to raise a substantial question about the prisoner's competency to be executed." *Id.*

In setting forth the procedures for handling a *Ford* claim, the Tennessee Supreme Court properly followed the narrow concurring opinion of Justice Powell in establishing the standard for competency to be executed and by placing the burden of proof on the prisoner to make a threshold showing of incompetence for a hearing. The court then chose to implement the views in the opinion of Justice Marshall, which argued for more procedural protections than Justice Powell's opinion, to mandate an adversarial hearing in which the prisoner is able to present all relevant material regarding his competency and to cross-examine the state's expert witnesses. Therefore, the procedures identified in *Van Tran* are generally adequate to protect a prisoner's right to a fair hearing of his *Ford* competency claim as required by due process. To the extent that Coe challenges specific aspects of the *Van Tran* procedures, we discuss them below in Part II.C.

## B. Habeas Review

Coe filed his habeas application challenging the Tennessee courts' determination of his competency under *Ford* on

March 16, 2000, and therefore the amendments to 28 U.S.C. § 2254 in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this court's standard of review. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). As amended, § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Coe contends that AEDPA does not apply to his claims, because applying AEDPA would impose impermissible retroactive effects and thus violate this court's decision in *In re Hanserd*, 123 F.3d 922 (6th Cir. 1997). More specifically, in response to the district court's conclusion that *Hanserd* only applies to AEDPA's bar on second and successive applications, he asserts:

> Indeed, *Hanserd* makes clear that any impermissible retroactive effect of the AEDPA, if not specifically authorized by Congress, cannot apply to bar relief. It does not seem plausible to conclude that *Hanserd* allows the application of pre-AEDPA to allow consideration of a claim, only to have the claim denied under the new law.

the procedural protections identified in the opinions of Justice Marshall and Justice Powell in a meaningful way in the moments before execution; a state could not make a sound decision in accordance with due process regarding a prisoner's competency to be executed at this time. Nevertheless, a state must make its determination when execution is imminent. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998). Whether the competency determination is made in the week or the month before the prisoner's scheduled execution, the state is entitled to exercise discretion in creating its own procedures "[a]s long as basic fairness is observed." *Ford*, 477 U.S. at 427 (Powell, J., concurring).

In the present case, on December 15, 1999, the Tennessee Supreme Court remanded the issue of Coe's competency to the Tennessee trial court after setting Coe's execution for March 23, 2000. The trial court held an evidentiary hearing on Coe's competency in late January 2000 and issued its decision on February 2, 2000. The Tennessee Supreme Court affirmed the trial court's decision on March 6, 2000. We conclude that the Tennessee courts' determination was made while Coe's execution, less than two months away, was imminent. The Tennessee courts' use of the phrase "present competency" did not constitute a misunderstanding of the proper issue under *Ford* of whether Coe is competent to be executed at his imminently scheduled execution date.

We acknowledge Coe's argument that, due to the special nature of his claimed DID affliction, he will degenerate as the execution looms and his condition will significantly worsen. The Tennessee Supreme Court expressly set forth a procedure in *Van Tran* to deal with this type of situation. The court stated,

> If a prisoner is found to be competent, subsequent *Ford* claims will be disallowed unless the prisoner, by way of motion for stay, provides this Court with an affidavit from a mental health professional showing that there has been a substantial change in the prisoner's mental health

or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Id.* at 362 (quotations omitted).

## C.  Coe's Habeas Application

### 1.  Entitlement to Relief Under *Ford*

Coe argues that the Tennessee courts erred in deciding his competency to be executed because they evaluated his present competency rather than determining his future competency at the moment of execution. The thrust of Coe's argument is that, he claims, he suffers from Dissociative Identity Disorder ("DID"), which causes him to dissociate under stress, and that he will thus dissociate as his execution grows near and will not have the requisite competency at the time of his execution.

In *Ford*, the Supreme Court held that the Eighth Amendment prohibits the execution of a prisoner who is insane. *See* 477 U.S. at 409-10. If taken to its logical extreme, as suggested by Coe, a state would be obligated to determine whether a prisoner is competent to be executed at the exact moment of execution in order to comply with *Ford*. Justice O'Connor acknowledged that this problem is due to the nature of a competency-to-be-executed claim in her opinion in *Ford*:

> By definition, [a *Ford* claim] can *never* be conclusively and finally determined: Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary.

*Id.* at 429 (O'Connor, J., concurring in the result in part and dissenting in part).

We do not believe that the Supreme Court in *Ford* meant to require a state to determine a prisoner's competency at the exact time of his execution. It would be impossible to follow

The whole point of retroactivity analysis is that Robert Coe has been unfairly trapped by a change in the law. If he knew that the AEDPA would cut off his right to relief on a *Ford* claim, he certainly would have raised the claim in his first petition, which clearly would have been governed by the pre-AEDPA law. *Lindh v. Murphy*, 521 U.S. 320 (1997). It is for this reason that the AEDPA does not apply, because the retroactive effect which has occurred is the new effect of Robert Coe's filing of claims in his first petition – not only the cutting off of his right to file the claim, but the prospect of being denied relief under the new standards of the AEDPA.

Petitioner's Memorandum in Support of Motion for Stay at 70-71.

In *Hanserd*, we concluded that where AEDPA's gatekeeping provision prohibiting second or successive habeas applications prevents a prisoner from bringing a *Bailey* claim under § 2255 but where the claim could have been raised in a subsequent application under the pre-AEDPA law, AEDPA's gatekeeping provision has an impermissible retroactive effect and is not applicable to the *Bailey* claim. *See Hanserd*, 123 F.3d at 929-34. This court subsequently limited its holding in *Hanserd* to the particular claim in that case and concluded that "while *Hanserd* is not strictly limited to claims arising under *Bailey*, apart from that class of claims, there will be few other cases 'in which the difference matters' and on which the gatekeeping requirements of AEDPA will thus have an impermissibly retroactive effect." *In re Sonshine*, 132 F.3d 1133, 1135 (6th Cir. 1997) (quoting *Hanserd*, 123 F.3d at 934 n.21). It is clear that the circumstances presented in this appeal differ significantly from those presented in *Hanserd.* Coe raises a *Ford* competency claim rather than a *Bailey* claim, and this court previously has determined that Coe's application is not barred by AEDPA's prohibition on second or successive habeas applications because Coe's *Ford* competency claim was not ripe until his execution was imminent and thus was not ripe when his initial habeas application was filed. Thus AEDPA's

gatekeeping provision does not have an impermissible retroactive effect on his *Ford* habeas claim. In light of our *Sonshine* decision, we cannot accept Coe's interpretation of the *Hanserd* decision as holding that AEDPA has an impermissible retroactive effect whenever AEDPA's standard of review, applied to an application filed after AEDPA's effective date, results in a decision that would have been different under the pre-AEDPA standard of review. Nevertheless, we note that even if we were to apply the pre-AEDPA standard of review to Coe's habeas application, our determination would not be different.[2]

In reviewing Coe's challenge to the Tennessee courts' determination of his competency to be executed, we are faced with the question of whether competency is a question of fact or a mixed question of fact and law. In *Van Tran*, the Tennessee Supreme Court concluded that the determination of competency to be executed is a question of fact. *See* 6 S.W.3d at 271. Although this court has never examined the nature of this type of competency determination, we have treated a defendant's competency to plead guilty and to be recommitted as a mixed question of fact and law. *See Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995), *cert. denied*, 516 U.S. 1096 (1996); *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir.), *cert. denied*, 509 U.S. 907 (1993). If competency to be executed is a question of fact, under § 2254(e)(1) the state courts' competency determination is

---

[2] Under the pre-AEDPA analysis, this court reviews a district court's refusal to grant a writ of habeas corpus de novo, but reviews the district court's factual findings for clear error. *See Combs v. Coyle*, -- F.3d --, 2000 WL 201970, at *6 (6th Cir. Feb. 23, 2000). A state court's factual findings "are entitled to complete deference if supported by the evidence." *Id.* Under this presumption of correctness, a petitioner has the burden of "establish[ing] by convincing evidence that the factual determination by the state court is erroneous." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). This "presumption only applies to basic, primary facts, and not to mixed questions of law and fact" and "also applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Id.*

entitled to a presumption of correctness that may be rebutted only by clear and convincing evidence. In addition, for questions of fact a federal court may grant habeas relief "only if the state court's decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Harpster*, 128 F.3d at 326 (quoting § 2254(d)(2)). If competency is a mixed question of fact and law, however, then § 2254(d)(1) will apply and we must determine whether the state courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Harpster*, 128 F.3d at 326-27.

For purposes of our review, we will apply the standard of review that is most favorable to Coe, without deciding if that standard of review is mandatory. Because the state courts' decision is entitled to a presumption of correctness under the standard of review for questions of fact, we will apply the more lenient standard for mixed questions of fact and law.[3] Where a mixed question is fact-intensive and the Supreme Court has not established a clear "rule" requiring a certain result, this court has concluded that the "unreasonable application" prong of § 2254(d)(1) applies. *See Nevers v. Killinger*, 169 F.3d 352, 360 (6th Cir.), *cert. denied*, 119 S. Ct. 2340 (1999). Because competency to be executed is a fact-intensive inquiry and because the Supreme Court has not established a clear rule on what particular circumstances will constitute incompetence to be executed, we will apply the "unreasonable application" prong in this case. Under this test, a state court's decision will be considered an unreasonable application of clearly established Supreme Court precedent if it is not "debatable among reasonable jurists" or is "so offensive to existing precedent, so devoid of record support,

---

[3] If we were to view this appeal as presenting a factual issue only, we would conclude, both under pre-AEDPA and post-AEDPA law, that the district court's denial of habeas relief was appropriate. Coe has not shown that the state courts' determination of his competency was clearly erroneous or unreasonable.