United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 26, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-20301

_____

IN RE: JAMES BLAKE COLBURN

     Movant.

No. 03-20308

JAMES BLAKE COLBURN

     Petitioner-Appellant

  v.

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

     Respondent-Appellee

On Motion to Stay Execution, Vacate Transfer Order
and Remand to Federal District Court and
Appeal from the United States District Court
for the Southern District of Texas
No. H-03-1038

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

    Petitioner-Appellant James Blake Colburn, who is scheduled

to be executed at 6 pm on March 26, 2003, filed in the district

---

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

court a motion for stay of execution premised on the argument that he is incompetent to be executed under the standards set forth in Ford v. Wainwright, 477 U.S. 399 (1986). The district court, relying on Fifth Circuit precedent, considered Colburn's motion to be a successive habeas application and transferred the case to this court. See In re Epps, 127 F.3d 364 (5th Cir. 1997). The district court also denied Colburn's request for a certificate of appealability (COA). Colburn then filed in this court a Motion to Stay Execution, Vacate Transfer Order and Remand to Federal District Court, as well as an Application for Certificate of Appealability. Treating Colburn's first motion as a motion for authorization to file a successive habeas application, id. at 365, we decline authorization to file a successive habeas application, and we deny a stay of execution. We also decline to issue a COA.

I.  FACTS AND PROCEDURAL HISTORY

Briefly, Colburn was convicted and sentenced to death in 1995 for the murder of a woman hitchhiking near his home. On direct appeal, the Court of Criminal Appeals affirmed his conviction and sentence. Colburn v. State, 966 S.W.2d 511 (Tex. Crim. App. 1998). In doing so, it refused to consider the claim that he was incompetent to be executed, finding it unripe for consideration because Colburn's execution was not imminent. Id. at 513. After exhausting state habeas relief, he filed an application for a writ of habeas corpus in the District Court for

2

the Southern District of Texas in 1999. In that petition, Colburn raised several issues, including his lack of competency to stand trial. However, Colburn did not raise the claim that he was incompetent to be executed under the Ford standard. The district court denied his request for relief. In an unpublished opinion, we denied his request for a COA on any of the issues raised.

Execution was initially set for November 6, 2002. However, Colburn received a stay of execution from the Supreme Court. Colburn had based his application for stay to the Supreme Court on two grounds: (1) the state district court failed to satisfy constitutional requirements of due process when it refused to grant Colburn a hearing on the question of whether he was competent to be executed under the Ford standard; and (2) the federal district court and this court erred in holding that, because Colburn had not presented his Ford claim in his original habeas petition, a petition raising that claim now constituted a second or successive petition. After the stay, Colburn filed a petition for writ of certiorari further urging these points of review; however, the Court ultimately declined to grant certiorari. The state moved to reset the execution date, and Colburn was rescheduled to be executed on March 26, 2003.

On March 14, Colburn filed a Motion to Vacate Execution Date and Conduct Proceedings to Adjudicate Ford Competency in state district court. Colburn argued that a more recent and complete

3

psychiatric evaluation conducted by Colburn's own expert raised a significant question as to his competency to be executed. He requested a hearing before that court to determine whether he was competent to be executed. The court denied this motion, as well as subsequent motions for appointment and funding of an independent mental health expert and a bench warrant to enable neuropsychological testing.

Colburn then filed a petition for a writ of mandamus and stay of execution with the Texas Court of Criminal Appeals. Colburn urged the court to grant a stay of execution and issue a writ of mandamus ordering the state district court to conduct a competency hearing. The Court of Criminal Appeals denied that petition.

On March 25, Colburn filed a Motion for Stay of Execution in federal district court. The district court, treating the motion as an application for a writ of habeas corpus, found that, because Colburn had not raised a Ford claim in his original habeas petition, this motion amounted to a successive habeas petition which Colburn could not file in district court until he had "move[d] in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A) (2000). As a result, the district court denied Colburn's request for relief and transferred the case to our court. In re Epps, 127 F.3d at 364-65.

4

The district court based its decision to transfer on the grounds that it lacked jurisdiction to rule on Colburn's claim. See United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000) ("Accordingly, § 2244(b)(3)(A) acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition until [the circuit court] has granted the petitioner permission to file one."). In his filings in this court, Colburn effectively asks for authorization to file a successive habeas application in the district court and for a stay of execution.

II.   COLBURN'S CLAIM OF INCOMPETENCY TO BE EXECUTED

Colburn presents the same issue in this motion that he raised in the appeal we denied on the eve of his previous execution date – whether § 2244(b) should apply when a petitioner raises a Ford claim in a subsequent habeas petition after not having raised the claim in his original habeas petition. In our prior opinion, controlled by circuit precedent discussed below, we found both that § 2244(b) applies to these kinds of Ford claims and that Colburn had not presented evidence of incompetency to be executed sufficient to demonstrate that his execution would violate the Eighth Amendment.

Colburn asserts that the district court erred in treating his Motion for Stay of Execution as a successive habeas application. He argues that § 2244(b) should not apply in the context of a Ford claim and that, therefore, his request for

5

relief was not a successive application.  However, as the district court correctly noted and as we found when Colburn raised this same claim in November, Fifth Circuit precedent clearly and unambiguously states the rule: a prisoner who fails to raise a Ford claim in his original habeas petition and attempts to do so in a subsequent petition has filed a "successive petition" within the meaning of § 2244(b). Richardson v. Johnson, 256 F.3d 257, 258-59 (5th Cir. 2001); In re Davis, 121 F.3d 952, 956-57 (5th Cir. 1997).  Therefore, the district court properly treated Colburn's motion as a successive habeas application and transferred the case to this court. Because Colburn is attempting to file a successive habeas application, he must first seek authorization to do so in this court.  28 U.S.C. § 2244(b)(3)(A).  As such, we will treat his filing in this court as a motion for authorization to file a successive habeas application.  Kutzner v. Cockrell, 303 F.3d 333, 335 (5th Cir. 2002).

There are two principal differences between the substantive and procedural framework leading up to this appeal as compared with Colburn's November appeal.  First, Colburn's motions in Texas state court were slightly different this time around.  In November, Colburn moved in state district court to stop involuntary psychiatric treatment and conduct a competency examination by a neutral expert, to stay his date of execution, and for funding for an independent psychiatric expert.  After the

6

state district court denied his motions, Colburn asked the Texas Court of Criminal Appeals to stay his execution and to issue a writ of mandamus ordering the district court to conduct a competency hearing. While the state court motions differed slightly this time, our November decision in no way depended upon the precise procedural posture of Colburn's state court filings. Thus, these minor differences are insufficient to justify a different result from that which obtained in November.

Second, Colburn presents new competency evidence in the form of a report written by Dr. Diane Mosnik, who examined and tested Colburn approximately one month ago. Dr. Mosnik, after noting that Colburn had decompensated in the time since the first execution was stayed,[1] reached two conclusions. First:

> Under the circumstances, including the present level of information available in the records and the limited testing permitted by conditions at the Polunski Unit, the conclusion that Mr. Colburn is competent to be executed cannot be asserted in a manner consistent with reasonable standards of the psychological profession. To the contrary, Mr. Colburn's lengthy psychiatric history, recent evidence of significant decompensation resulting in hospitalization on January 10, 2003, and his documented tendency to further decompensate under stress, all support the following conclusion: Mr. Colburn is not competent to be executed.

However, she went on to state that:

> To ensure a thorough evaluation of this inmate in order to ascertain that he meets the minimum standards for

---

[1] Although Dr. Mosnik did not examine Colburn at the time of his November execution proceedings, she reviewed his records, including the reports of the two court-appointed experts who had deemed Colburn competent to be executed.

7

> competence to comprehend his imminent execution date, it will be necessary to conduct a cognitive evaluation, that is, a neuropsychological assessment of his intellectual and cognitive abilities. A neuropsychological evaluation will speak directly to his ability to comprehend the law, the charges against him, his responsibility to the law, and the meaning of being sentenced to an imminent execution.

In other words, Dr. Mosnik presents a qualified opinion that Colburn might not be competent but that further testing is required in order to resolve the question completely.

Under Ford, the burden is on the defendant to rebut the presumption of competency; he must do so by making a "substantial threshold showing of insanity." Ford, 477 U.S. at 422. Texas law requires that, in order to be found competent to be executed, a defendant must understand: "(1) that he or she is to be executed and that the execution is imminent, and (2) the reason he or she is being executed." TEX. CRIM. PROC. CODE ANN. § 46.05(h) (Vernon 2002). Dr. Mosnik's opinion does not seriously call into question Colburn's competency to understand either of these.[2] The qualified opinion offered by Dr. Mosnik does not amount to the kind of substantial threshold showing of incompetence that would create a Ford issue. See, e.g., Coe v. Bell, 209 F.3d 815, 828 (6th Cir. 2000) (upholding finding of competency where defendant suffered from dissociative identity disorder, a mental

---

[2]  Dr. Mosnik states that Colburn does not understand the reason he is being executed in part because he views this execution as "God's way of punishing him." This belief is certainly not sufficient to demonstrate that Colburn does not understand why he is being executed.

8

illness which would cause him to decompensate as the execution neared, but was nevertheless able to understand that execution was imminent and the reasons therefor). As a result, Colburn has again failed to present evidence of incompetency to be executed sufficient to demonstrate that his execution would violate the Eighth Amendment.

III. COLBURN'S REQUEST FOR A CERTIFICATE OF APPEALABILITY

Colburn also asks that we grant him a COA on these issues to enable him to appeal the district court's order. We may grant the petitioner's request for a COA only if he makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Colburn must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)). Where, as here, the district court has denied the petitioner's claim on procedural grounds, the petitioner must demonstrate both that "jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order to obtain a COA. Slack, 529 U.S. at 484.

As discussed above, the district court denied Colburn's motion on the jurisdictional ground that, because Colburn's motion was in essence a successive habeas petition, the court had no authority to consider it without prior authorization from this court. Given the clear Fifth Circuit precedent on this issue, it would not be debatable among jurists of reason whether the district court properly concluded that it lacked jurisdiction to consider Colburn's successive habeas application. Additionally, jurists of reason would not find it debatable whether Colburn's evidence of incompetency to be executed amounts to the denial of a constitutional right. Therefore, Colburn is not entitled to a COA on his claims.

IV.  CONCLUSION

Construing Colburn's filing as an application for authorization to file a successive habeas application, it is DENIED. His application for a stay of execution is DENIED. His request for a COA is DENIED.