IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 23, 2013 at Knoxville

**DAVID ALLEN LACKEY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-1103      Seth Norman, Judge**

**No. M2012-01482-CCA-R3-PC - Filed September 17, 2013**

The petitioner, David Allen Lackey, appeals the determination of the post-conviction court that due process did not mandate a waiver of the statute of limitations. The petitioner is currently serving a life sentence in the Department of Correction following his conviction for first degree murder and theft of property valued under $500. Following a direct appeal, the petitioner filed an untimely petition for post-conviction relief. After the petition was denied by the post-conviction court, this court remanded the case for a determination of whether the petitioner's due process rights required that the statute of limitations be tolled. After a hearing, the post-conviction court determined that the petitioner had failed to carry his burden of establishing his right to a tolling of the statute of limitations and dismissed the petition. The petitioner contends that the court's determination was error. Following review of the record, we affirm the dismissal of the petition as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

Kara Everett, Mt. Juliet, Tennessee, for the appellant, David Allen Lackey.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The petitioner was found guilty by a jury of premeditated murder, felony murder

during the perpetration of a theft, and theft of property valued under $500. *State v. David Allen Lackey*, No. M2001-01043-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 759, *1 (Tenn. Crim. App., at Nashville, Sept. 6, 2002). Following merger of the two murder convictions, the petitioner was sentenced to a term of life imprisonment to be served concurrently with a sentence of eleven months and twenty-nine days for the misdemeanor theft conviction. *Id*. at *1-2. Thereafter, the petitioner filed a direct appeal with the court challenging the sufficiency of the evidence and the trial court's denial of his motion to suppress his statements to police. *Id*. at *2 Following review, this court affirmed the convictions on September 6, 2002. No permission to appeal was filed with the Tennessee Supreme Court. Contained within the record is a motion submitted by trial counsel to withdraw as counsel of record. Also within the record is a letter written by trial counsel to the petitioner in which trial counsel is clear that he will not be filing for permission to appeal to the Tennessee Supreme Court. In the letter, trial counsel also delineated the method to file if the petitioner chose to proceed pro se with the application.

On October 31, 2003, the petitioner filed a pro se petition for post-conviction relief. *David Lackey v. State*, No. M2004-00558-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 317, *2 (Tenn. Crim. App., at Nashville, Mar. 30, 2005). The post-conviction court concluded that the petition was timely filed but failed to include any specific grounds or factual basis to support the petitioner's allegations. The petitioner was allowed thirty days to file an amended petition. *Id*. However, the post-conviction court determined that the amended petition also contained only "again lists vague and ambiguous claims without proper support consisting of specific allegations" and, further, lacked the required verification under oath. *Id*. at *3. As such, the court denied the amended petition.

The petitioner appealed that denial to this court, which concluded that the petition for relief had not been timely filed. *Id*. at *6. Based upon that finding, this court affirmed the post-conviction court's dismissal of the petition. However, the petitioner filed a timely petition for rehearing with the court, alleging that he "was misled to believe that his counsel was continuing his appeals," and due process requires the tolling of the statute of limitations. *David Lackey v. State*, No. M2004-00558-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 531, *4 (Tenn. Crim. App., at Nashville, May 31, 2005). After consideration, this court withdrew its initial opinion and remanded the matter to the post-conviction court for a determination of whether the petitioner's due process rights required that the court consider the petition. *Id*. at *8.

Thereafter, on June 22, 2010, the post-conviction court held an evidentiary hearing to determine whether due process required tolling of the statute of limitations and further consideration of the petitioner's post-conviction petition. At the hearing, the petitioner proceeded under the theory that tolling was required because he had been mentally

incompetent during the period when the statute of limitations ran. He called multiple witnesses to testify and introduced medical and psychological reports in support of his theory.

The first witness called for the petitioner was James Michael Stanfield, Jr., a fellow inmate who had been incarcerated with the petitioner for approximately ten years. Mr. Stanfield testified that the petitioner had problems adjusting to life in prison, especially because of his youth and the long sentence he had received. Mr. Stanfield did acknowledge that it was typical to be depressed when receiving a life sentence, which he also had received. According to Mr. Stanfield, the petitioner "embraced despair" and began using drugs to help him cope, a common action in prison. He related that the petitioner used whatever drug was available, including morphine, heroin, and marijuana. He stated that the petitioner just "pretty much stayed intoxicated on something" all the time.

Mr. Stanfield testified that he assisted the petitioner in filing the amended petition for post-conviction relief. He testified that during this period of time, the petitioner was still heavily using drugs. Mr. Stanfield did not believe that the petitioner had any understanding of what was involved with a post-conviction, even stating that the petitioner was "procedurally clueless." He testified that he attempted to explain the process, but it did not help. He also said that he reviewed all correspondence that the petitioner received in the mail and tried to aid in the petitioner's understanding of that as well. Mr. Stanfield believed that the petitioner was showing signs of being depressed during this period and seemed to have "given up hope in life."

The petitioner next called Joseph Lance Reisner, another inmate who had served time with the petitioner, even sharing a cell with him at one point. Mr. Reisner stated that he and the petitioner often "got high" together. According to Mr. Reisner, who was serving three consecutive life sentences, the usage of drugs was common among the inmates in prison, and, in fact, he could not survive without it. Mr. Reisner also related that the petitioner was transferred to a different unit in the prison, where his drug usage increased as he was with a "rougher crowd." He stated that it was hard to even have a conversation with the petitioner because of the drug usage. It was during this period that the post-conviction proceedings were occurring.

Mr. Reisner testified that he did not believe the petitioner had understood any of the paperwork he received regarding his case. He also stated that he believed that the petitioner was severely depressed during this time, although acknowledging that was a common complaint among those with long sentences. He related that the petitioner was capable of functioning within the prison system. However, according to Mr. Reisner, the petitioner had several jobs within the prison. He indicated that the petitioner had worked in the kitchen

prior to being released from that job for smoking marijuana while on the job. Mr. Reisner was an instructor in the prison barber shop, and the petitioner was taking a cosmetology class. Mr. Reisner testified that the petitioner was talented with cutting hair, but he had problems comprehending the academic portion of the course. Mr. Reisner testified that he helped the petitioner by giving the petitioner multiple explanations for the technical aspects. He stated that some concepts the petitioner was simply not able to understand at all. However, Mr. Reisner stated that the petitioner understood "common sense things" easily, but, when reading involved terms of "jargon" or chemical processes, the petitioner needed further explanation.

The next witness called was Nancy Hall, the petitioner's biological mother. She testified that she had only raised the petitioner until he was three years old, at which time her ex-husband took him from her. She did not see him again for over twenty years. Ms. Hall testified that the petitioner was a sickly child and that there were some instances of impairment exhibited by him. For instance, she testified that the petitioner refused to cry when he was hungry or cold. She also related the circumstances of an automobile accident which occurred when the petitioner was thirteen months old. He was ejected from a car, landing on his face which pushed the bone in his nose into his brain. As a result, the petitioner was in the hospital approximately one month. After he was released, the petitioner seemed to have issues with his attention span. She testified that he showed signs of brain and behavioral limitations, as well as an inability to process basic information.

The final witness to testify was the petitioner's sister, Ms. Jennifer Mae Sizemore. She recounted how she and the petitioner had been placed in two foster homes prior to being placed in the home in which they were eventually adopted. She testified that she and the petitioner got in lots of trouble during their childhood, with the petitioner even being sent to a camp. Ms. Sizemore also stated that the petitioner made failing grades in school even when she helped him with his homework. She testified that the petitioner just did not comprehend the lessons even when they were explained multiple times. She also stated that the petitioner had been recommended for special education classes. Ms. Sizemore also related that the petitioner had been treated for depression and schizophrenia. She also testified that the petitioner began using drugs at the age of twelve or thirteen.

Also included in the evidence were multiple medical reports for the petitioner. According to one report, at the age of fourteen, mental health professionals diagnosed the petitioner with mood disorders. However, the report also indicated that he was oriented to person, place, and time, and he did not manifest any evidence of disturbance in thought or perception.

Another of the exhibits established that the petitioner was often truant and was a

behavioral problem both at school and home. In 1996, after being expelled from all Wilson County Schools, he was placed in the Department of Human Services' custody. While in custody, he was placed in special education classes because of a learning disability in math. In an assessment performed on the petitioner, the report concluded that the petitioner had average intelligence but performed below his grade level in math and reading. The report did not offer a diagnosis of the petitioner as being mentally incompetent.

The petitioner filed an affidavit in support of his petition. The general contents of the affidavit are that he did not understand the letter he received from trial counsel regarding his withdrawal and not filing an application for permission to appeal. According to the affidavit, the petitioner was "stoned" in 2002 when he read the letter. He further alleged that he re-read the letter three years later, after he had gotten sober, and claimed he still did not understand the contents.

After hearing the evidence presented, the post-conviction court took the matter under advisement. Thereafter, the court issued a written order dismissing the petition for relief. The petitioner has now timely appealed that dismissal.

**Analysis**

On appeal, the petitioner contends that the trial court erred in concluding that due process concerns did not toll the statute of limitations in his post-conviction case. He asserts that the proof supplied to the court showed that he was "mentally unable to manage his personal affairs or understand his legal rights and liabilities during the period in question."

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegation of fact by clear and convincing evidence. T.C.A. § 40-30-110(f).

This court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008). This court defers to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, appellate review is de novo with no presumption of correctness. *Pylant*, 263 S.W.3d at 867-68.

Under Tennessee Code Annotated section 40-30-102(a), a post-conviction petition must be filed within one year of "the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." The statute explicitly states, "The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." *Id.* It further stresses that "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." *Id.* In the event that a petitioner files a petition for post-conviction relief outside the one year statute of limitations, the trial court is required to summarily dismiss the petition. T.C.A. § 40-30-106(b).

Subsection (b) of the statute sets forth the three narrow exceptions under which an untimely petition may be considered: (1) when the claim is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized at the time of trial and which requires retrospective application; (2) when the claim is based upon new scientific evidence establishing that the petitioner is innocent; and (3) when a previous conviction that was not a guilty plea and which was used to enhance the petitioner's sentence has been held to be invalid. *Id.* § 40-30-102(b). The post-conviction court must also consider an otherwise untimely petition if the application of the statute of limitations would be a denial of due process. *Seals v. State*, 23 S.W.3d 272, 278-79 (Tenn. 2000).

> [B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that a potential litigant be provided an opportunity for the "presentation of claims at a meaningful time and in a meaningful manner." The test is "whether the time period provides an applicant a reasonable opportunity to have the claimed issue heard and determined."

*Id.* at 277-278 (quoting *Burford v. State*, 845 S.W.2d 204, 207 (Tenn. 1992)).

In the recent case of *Artis Whitehead v. State*, our supreme court discussed the matter of due process in a post-conviction context. The court identified three circumstances in which due process requires tolling the post-conviction statute of limitations. *Artis Whitehead v. State*, ___ S.W.3d ___, 2013 Tenn. LEXIS 310, at *19 (Tenn., Mar. 21, 2013). The first of the three circumstances involves claims for relief that arise after the statute of limitations has expired. *Id.* The second due process basis for tolling the statute of limitations involves prisoners whose mental incompetence prevents them from complying with the statute's deadline. *Id.* at *20-21. The third exception is when attorney misconduct necessitates the tolling of the statute of limitations. *Id.* at 21.

The petitioner is correct that case law is clear that "a petitioner who is mentally incompetent is denied an opportunity to raise a claim in a meaningful manner unless the statute of limitations is tolled during the period of mental incompetence." *Seals*, 23 S.W.3d at 27. The standard of mental incompetence was addressed by the Tennessee Supreme Court in *State v. Nix*. The court held that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001). The petitioner must make a prima facie showing of mental illness, which requires that the petitioner state in the petition specific factual allegations regarding his or her inability to manage personal affairs or understand legal rights or liabilities. *Id*. at 464. The petitioner may satisfy this requirement by attaching affidavits, depositions, reports, or other credible evidence of his or her mental condition to the petition. *Id*. It is not necessary that the petitioner use materials from mental health professionals, but, instead, the petitioner may call upon anyone with knowledge of his or her mental condition such as family members or prison officials. *Id*. "Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and avoid summary dismissal . . . ." *Id*. (citing *Van Tran v. State*, 6 S.W.3d 257, 268 (Tenn. 1999)). "Even if a petitioner satisfies the prima facie showing at the hearing, the petitioner bears the burden of proving by clear and convincing evidence that the statute of limitations should be tolled for incompetence, and that as a result of the tolling, the petition is timely." *Id*. If this burden is not satisfied, the petition should be dismissed as time-barred. *Id*. at 465.

In very detailed findings of fact, the post-conviction court made the following statements:

> Petitioner first argues that the language in the letter counsel sent notifying him of the motion to withdraw was too complex for him to comprehend and that counsel did not include any information regarding a timeline for filing a post-conviction petition. However, the Court of Criminal Appeals apparently found that counsel had complied with all of the requirements regarding withdrawal of counsel on appointed cases under Rule 14. As a result, counsel was granted permission to be relieved in the matter by the appellate courts on September 13, 2002.
>
> . . . .
>
> The wording of the letter sent by counsel [to the petitioner] clearly states "After a review of the opinion of the Court of Criminal Appeals and the brief filed with the Court, I have decided I WILL NOT file an application for permission to appeal with the Tennessee Supreme Court on your behalf." The

previous IQ testing and mental evaluations performed on the Petitioner place his full scale IQ somewhere between 88-95, which is in the average-to-low-average range. Given the past IQ testing and psychological evaluations of the Petitioner, the Court does not believe that the language in the letter was too complex for a person of this range of mental ability to comprehend.

. . . .

The petitioner contends that he was and is mentally incompetent as the result of a combination of several factors and thus, he asserts, he was denied a reasonable opportunity to present a claim in a meaningful time and manner. . . . Such factors he alleges include suffering of severe depression, drug abuse and a history of the need for special education services. He also alleges mental incompetence based on a childhood marked by physical abuse and neglect, as well as a brain injury suffered in a car accident at [thirteen] months of age.

At the due process hearing, the Petitioner submitted affidavits of friends and family members and called upon several witnesses to testify as to his mental state. Two of the Petitioner's friends he met in prison testified to the effect that the Petitioner seemed very depressed and that he was drinking and abusing drugs quite heavily while incarcerated. They also stated that he did not seem to comprehend legal concepts and that he had difficulty with reading comprehension in general.

"[M]ental illness is not the equivalent of mental incompetence." . . . Mood disorders, depression, schizophrenia, alcoholism and drug abuse do not necessarily show that a person is unable to manage his personal affairs or understand his legal rights and abilities. . . . Furthermore, as a natural human response to being sentenced to lengthy terms of imprisonment, it seems as though severe depression would be extremely common in defendants in such situations.

Petitioner's mother and sister also testified on his behalf at the due process hearing in this matter. Jennifer Sizemore, Petitioner's sister, made statements supporting the contention that he required assistance with homework during his younger years and that he had a rough childhood as they grew up in foster homes. Nancy Hall, Petitioner's mother, testified to a brain injury he suffered when he was ejected from a vehicle in an accident when he was [thirteen] months old. She claims that Petitioner suffered brain damage as a result.

-8-

Although evidence tends to prove that the Petitioner has a history of behavioral and emotional problems, it does not appear as though he is, or ever has been, incompetent. Granted, reports show that his IQ is somewhere in the lower average category, but his mental intelligence is well above the level of mental retardation. Psychological and mental evaluations were conducted during the legal proceedings in this case, however, the results thereof did not warrant the granting of any relief in the prosecution of the charges.

Based on the foregoing analysis, the Court is of the opinion that the Petitioner has failed to show that he was incapable of either managing his personal affairs or understand[ing] his legal rights and capabilities during the period within which a petition for post-conviction relief could be filed. Therefore, it appears as though due process does not require that the untimely filed Petition for Post-Conviction Relief be considered.

Initially, we make note that it is undisputed that the petition for post-conviction relief filed in this case was untimely. The petitioner's only contention is that the statute of limitations should have been tolled because he was mentally incompetent during the period. However, after a review of the record, we are unable to conclude that the evidence preponderates against the post-conviction court's findings.

In his brief, the petitioner summarizes his argument as follows:

[T]he record demonstrates that the [petitioner], as an infant, showed signs of being organically and developmentally impaired. The record further demonstrates that severe brain trauma, brought on by a car accident as a thirteen month old infant, likely compounded that condition, the confluence of which brought about a lifetime of stunted intellectual and psychological development in the [petitioner]. While his serious mental and psychological conditions were not helped by his own drug abuse and self medication, the fact remains that the [petitioner] suffered from an *inability to comprehend even the most basic concepts*. The record shows that the [petitioner] could not hold a job in prison during the time period in question, and shows furthermore that without the dubious assistance of 'jailhouse lawyers,' the [petitioner] would never have even had the ability to file the flawed documents that he put before the [post-conviction] court. . . .

We do not dispute that the record does establish that the petitioner had a history of depression, mental disorders, and traumatic events in his life. Moreover, it is also quite clear that the petitioner has a history of drug abuse and a need for special education services.

However, mental illness is not the equivalent of mental incompetence. *Nix*, 40 S.W.3d at 463. Mood disorders, depression, schizophrenia, alcoholism, and drug abuse do not necessarily show that a person is unable to manage his personal affairs or understand his legal rights and abilities. *Id*. at 459.

While the record does show that the petitioner has difficulty with comprehension, it does not show that he is unable to function. Testimony was given that the petitioner was able to function in the prison system. Moreover, contrary to the petitioner's argument, the record does not indicate he was unable to keep a job in prison because of his mental issues. He was fired from the kitchen from smoking marijuana. Mr. Reisner testified that the petitioner understood "common sense things" easily and was able to learn some of the more complex things with help. This, in our opinion, is not an "inability to comprehend even the most basic concepts."

As pointed out by the post-conviction court, psychological and mental evaluations were conducted earlier in the legal proceedings in the case. The fact that the results did not warrant any type of relief strongly suggests that the petitioner is still unable to establish an entitlement to relief, as the only new information which might be relevant is his drug usage in prison and his depression because of his incarceration. The post-conviction court heard the testimony and reviewed the reports submitted by the petitioner and reached the conclusion that the petitioner was not legally mentally incompetent. We conclude nothing in this record preponderates against the finding that due process does not require tolling the statute of limitations.

## CONCLUSION

Based upon the foregoing, the dismissal of the petition for post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-10-